**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-614 (LOG/MSN) |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL A RULE 35 INDEPENDENT MENTAL EXAMINATION OF PLAINTIFF

### I.  INTRODUCTION

The School Board is seeking an independent mental examination pursuant to Federal Rule of Civil Procedure 35, of Plaintiff Jane Doe, to be conducted by Dr. Liza Gold, a highly-experienced forensic and clinical psychiatrist.  Good cause exists for such an exam:  Ms. Doe has placed her mental condition in controversy by her allegations of serious and ongoing emotional harm and her request for damages based on such harm, including costs of future medical and psychological care and diminished earning capacity.  Ms. Doe has also retained a forensic psychologist through whom she intends to offer expert testimony to bolster her claims of emotional distress.  She has indicated that she would consent to the exam if it were recorded and Dr. Gold were not permitted to ask about any matters that would overlap with the topics of Ms. Doe's deposition.  That significant limitation finds no support in case law, and would also violate the ethical standards of forensic psychiatry.

-1-

## II.     RELEVANT BACKGROUND

### A.     Ms. Doe's Allegations Of Emotional Distress And Ongoing Mental Harm

Ms. Doe is a 2018 graduate of Oakton High School who alleges that she was sexually assaulted on March 8, 2017, by a male classmate, as they were traveling on a trip with the school band.   According to Ms. Doe's complaint, the alleged assault occurred while the two former students were seated together under a blanket, on a bus filled with her bandmates, parent-chaperones, and one teacher.   Dkt. #23, First Am. Compl. ¶ 57.   Ms. Doe alleges that, during the trip, she felt "emotionally and physically ill from the trauma she had experienced," to the extent that she "could not eat, and was throwing up."   *Id.* ¶ 43.   She claims that the school's alleged failure to take action during the band trip "further traumatized" her.   *Id.* ¶ 3.

On the first school day after the band returned to Virginia, Ms. Doe was asked to speak about what had occurred on the bus to an Oakton High School administrator and a counselor, who were later joined by school's Safety & Security Specialist.   *Id.* ¶¶ 46, 47, 52.   According to Ms. Doe, during those interviews she was "scared and crying uncontrollably,"   *Id.* ¶ 51, and "still too traumatized to think past anything but her ongoing distress."   *Id.* ¶ 54.   Ms. Doe alleges that her interview with the Safety & Security Specialist "aggravated [her] emotional distress," *id.* ¶ 55, and that she "continued to cry throughout th[at] interview."   *Id.* ¶ 58.   Afterwards, when Ms. Doe called her father, she describes herself as "so traumatized" at the possibility of being punished that she cried inconsolably and became incoherent.   *Id.* ¶¶ 60-61.

Ms. Doe alleges that she became "increasingly sad and withdrawn" in the ensuing weeks. *Id.* ¶ 79.   She claims that "she struggled academically, emotionally, and physically for the remainder of the school year" and that "[s]he continues to struggle" even now.   *Id.* ¶¶ 7, 81. She alleges that she "has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional

distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care." *Id.* ¶ 112.  Ms. Doe seeks damages for, among other things, "past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity." *Id.* p. 21, ¶ 4 of "Wherefore" clause.

In discovery, Ms. Doe has indicated that she received treatment for emotional distress. *See* Exhibit 1, Doe's Answers to Def.'s Interrog. No. 2.  She has also produced records of that treatment.  On January 21, 2019, Ms. Doe informed the School Board that she intends to offer the expert testimony of a clinical psychologist, an experienced forensic consultant, who treats victims of sexual assault.  (Letter from Lauren A. Khouri dated January 21, 2019, Ex. 2.)[1]

## B.      Defendant's Request for a Rule 35 Examination

In early December, 2018, the School Board's counsel notified Ms. Doe's counsel of its intent to seek an independent mental examination by Dr. Liza H. Gold, for the purpose of evaluating Ms. Doe's claims of past, present, and future emotional harm and injuries.  A copy of Dr. Gold's curriculum vitae was provided to Ms. Doe's counsel on December 10, 2018.  Dr. Gold's qualifications include that she is a Board-certified forensic psychiatrist, a Clinical Professor at the Georgetown University School of Medicine, and also maintains a private clinical and forensic psychiatry practice.  *See* Exhibit 3, Decl. of Liza H. Gold, M.D. & Ex. A thereto.

---

[1] Ms. Doe did not provide a written report from her expert, as required by Rule 26(a)(2) and the Court's order of January 9, 2019 (Dkt. #64), which had extended the deadline for Ms. Doe's Rule 26(a)(2) disclosures to January 21, 2019.  The letter from Ms. Doe's counsel states that Ms. Doe's proposed expert intends to provide a written report on or before February 1, 2019. *See* Exhibit 2. The School Board has advised Ms. Doe that it is objecting to Ms. Doe's failure to provide a complete Rule 26(a)(2) disclosure, and the parties are discussing whether its objection could be resolved by a joint motion to extend the date of the School Board's Rule 26(a)(2) disclosures and shorten the time allowed for Ms. Doe's rebuttal, as suggested by her counsel's letter. *Id.*

In subsequent discussions regarding the manner and scope of the examination, the School Board's counsel relayed to Ms. Doe's counsel that the examination would consist of an interview by Dr. Gold of Ms. Doe lasting approximately four hours. Dr. Gold would talk to Ms. Doe about the facts and circumstances described in the complaint, including about her experiences since the March 2017 trip to Indianapolis, both in high school and in college. She would also ask questions about Ms. Doe's family and friends, her activities, and her physical and emotional state before and since March 2017.

Over the weeks that have followed, the School Board made a concerted effort to obtain Ms. Doe's consent to this examination and/or to narrow the areas of disagreement. In the most recent discussions, on January 24, 2019, Ms. Doe's counsel indicated that they would consent to the exam if it were recorded and limited to Ms. Doe's mental conditions such that Dr. Gold may only ask about Ms. Doe's "emotional well-being," and not anything else that may also be covered in Ms. Doe's deposition. *See* Ex. 4, Email from L. Khouri to A. Calem. As explained below, Ms. Doe cannot carry her burden to prove that such limitations are warranted.

## III.   ARGUMENT

### A.   Legal Standard For Court-Ordered Rule 35 Examinations

Federal Rule of Civil Procedure 35 permits the court to order a party to submit to a mental examination by a "suitably licensed or certified examiner" when that party's mental condition is in controversy, and upon good cause shown. The premise of broad and liberal discovery underlying the Federal Rules also applies to Rule 35, *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964). Even so, the trial judge "must decide, as an initial matter in every case, whether the party requesting a mental or physical examination … has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements … are necessarily related." *Id.* at 118-19.

The purpose of Rule 35 is enable the defendant to prepare itself properly for trial: "It places a defendant on an equal footing, as nearly as may be with a plaintiff, so far as concerns the opportunity to discover the true nature and extent of injury suffered." *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595, 597 (D. Md. 1960).

The Supreme Court has recognized that pleadings alone may be sufficient to meet the requirements of Rule 35 and warrant an examination of the plaintiff: "A plaintiff in a negligence action who asserts mental or physical injury … places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119. At the same time, trial courts have recognized that a Rule 35 examination requires more than a generalized allegation of "garden-variety" emotional distress, which some courts have described as "the generalized insult, hurt feelings and lingering resentment which anyone would be expected to feel if he or she were the recipient of an adverse … action attributed to discrimination." *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004).

Instead, the majority of courts will consider whether plaintiff has alleged "unusually severe emotional distress," "a specific mental or psychiatric injury or disorder," or "a claim for intentional or negligent emotional distress." *Turner v. Imperial Stores,* 161 F.R.D. 89, 93 (S.D. Cal. 1995) (collecting cases). They also consider whether the plaintiff intends to offer expert testimony to support a claim of emotional distress or has conceded that her or his mental condition is "in controversy" within the meaning of Rule 35(a). *Id.*

When the plaintiff alleges emotional distress that is ongoing and is anticipated to affect the plaintiff in the future, a Rule 35 examination is warranted. In *Rose v. Cahee,* No. 09-CV-142, 2009 WL 3756985, at *1-2 (E.D. Wis. Nov. 9, 2009), for example, the plaintiff alleged

"serious" psychological and emotional distress with continuing harm.  The court found that the plaintiff had placed her mental condition in controversy because "the extent of Rose's psychological and emotional distress will impact any eventual calculation of damages." *Id.* at *1 (citing *Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410 (N.D. Ill. 1994) (granting defendant's motion to compel a psychological exam of the plaintiff in a sexual discrimination action alleging ongoing emotional distress)).  The court rejected Rose's argument that good cause was not shown because she had produced her mental health records and did not intend to present expert testimony regarding her emotional injuries. *Id.* at *2.

In *Wilson v. Dalton*, 24 Fed. Appx. 777 (9th Cir. 2001), the plaintiff alleged "severe emotional distress and anguish" in his complaint, and gave "emotional descriptions of long-lasting and significant emotional distress, which, even if not expressly labeled as such, amount to allegations of severe emotional injury." *Id.* at 779.  The court found that a Rule 35 mental examination was appropriate.  *Id.*; *see also, e.g., Barnello v. Bayview Loan Servicing, LLC*, No. 6:14-cv-1383-Orl-41TBS, 2015 WL 6165277, at *2 (M.D. Fla. Oct. 20, 2015) (mental exam ordered when plaintiffs alleged severe stress, anxiety, inconvenience, frustration, annoyance, fear, confusion, difficulties with concentration and memory, and loss of sleep resulting from collection activities); *Torrey v. Marion County Sch. Bd..*, No. 5:12-cv-662-Oc-10PRL, 2014 WL 457766, at *2 (M.D. Fla. Feb. 4, 2014) (mental exam ordered where plaintiff alleged extreme emotional distress, physical injury, and lost business opportunities); *Hearring v. Sliwowski,* No. 3:10-0746, 2011 WL 3897803, at *1 (M.D. Tenn. Sept. 6, 2011) (mental exam ordered even after discovery deadline had passed where plaintiff alleged "grievous mental suffering, including but not limited to post-traumatic stress disorder"); *Mandujano v. Geithner*, No. C 10-01226 LB, 2011 WL 825728, at *2 (N.D. Cal. March 7, 2011) (mental exam ordered where plaintiff

described himself as "devastated" by the loss of his job, and said he suffered symptoms such as sleep loss, weight gain, fear of the unknown, and migraines); *Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 181 (N.D. Iowa 2001) (mental exam ordered where plaintiff alleged extreme emotional distress and sought mental health care therefor).

**B.      Ms. Doe's Mental Condition Is In Controversy And There Is Good Cause For An Independent Mental Examination.**

This case fits at least three of the scenarios under which courts have ordered mental examinations.

First, Ms. Doe has alleged severe emotional distress and mental harm, which she alleges is ongoing and will necessitate future medical and psychological care.  Her allegations are far more than generalized allegations of hurt feelings or a catch-all claim for emotional distress.  Her complaint is rife with allegations of emotional injuries. *See, e.g.*, Dkt. #23, ¶¶ 3, 7, 43, 54, 55, 60, 81, 82, 91, 93.  She specifically alleges that she "has suffered *and continues to suffer* losses of educational opportunities and benefits, along with … *emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.*"  *Id.* ¶ 112.  Such prognostications of ongoing harm and future losses are particularly remarkable in light of Ms. Doe's youth, and far more than run-of-the-mill allegations of generalized insult, hurt feelings, and lingering resentment that any lay person would understand.  Ms. Doe also has indicated in her responses to discovery that she sought and received care from professionals for her emotional distress, and seeks not only recoupment of those expenses but also damages for future medical and psychological care.  *See* Exhibit 2.  This alone is enough to demonstrate good cause to allow the School Board an opportunity to evaluate her claims of severe and ongoing emotional distress by an independent psychiatrist.

Ms. Doe's case also fits a second scenario under which courts have found a Rule 35 exam warranted: Ms. Doe has retained a forensic psychologist to offer testimony to bolster her claim of emotional distress. *See* Ex. 2.

Third, Ms. Doe has agreed that her mental condition is in controversy. *See* Ex. 4. She contests only whether "good cause" exists. *Id.* Further, Ms. Doe has now indicated that she would consent to a Rule 35 exam "if it is recorded and the scope is limited to Ms. Doe's 'mental condition,'" which Ms. Doe contends should exclude discussion of the alleged assault and any other topics that also will be covered in Ms. Doe's deposition. *Id.*

When the parties' only dispute is regarding the manner and scope of the Rule 35 examination, courts find the exam to be warranted and place the burden on the plaintiff (or party to be examined) to show why the manner and scope should be limited. *McKisset v. Brentwood BWI One LLC*, Civ. Case No. WDQ-14-1159, 2015 WL 8041386, at *3 (D. Md. Dec. 4, 2015) (holding plaintiff failed to meet burden to show why Rule 35 exam should be recorded); *Abdulwali v. Washington Metro Area Transit Auth.*, 193 F.R.D. 10, 15 (D.D.C. 2000) (finding that plaintiff failed to show "a compelling need" for recording of her psychiatric examination and limiting the topics of the psychiatrist's questions); *Stoner v. New York City Ballet Co.*, 2002 WL 31875404, at *6 (S.D. N.Y., Dec. 24, 2002) (holding plaintiff failed to meet burden to limit a psychiatrist's questions during Rule 35 examination); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 630 (D. Kan. 1999) ("[T]he party seeking the presence of a third party or a recording device must carry the burden of convincing the court.").

Ms. Doe cannot carry her burden here.

**C.    Ms. Doe Has Not Shown Any Good Cause For The Restrictions She Seeks.**

**1.    There Is No Legal Or Factual Basis To Preclude Dr. Gold From Asking Questions About The Events At Issue.**

Undersigned counsel has found no case in which a court prohibited an examining psychiatrist from asking a plaintiff during her exam about the events alleged to have caused the emotional distress, or even other potential alternative causes.  Nor has Ms. Doe identified such a case.

When a plaintiff's mental condition is in controversy, a Rule 35 exam is appropriate in order for the defendant independently to assess the nature, cause and extent of the plaintiff's claimed emotional distress.  *Smith v. Board of Governors of Univ. of North Carolina*, No. 7:08-cv-30-D, 2008 WL 4877131, at *2 (E.D.N.C. Nov. 10, 2008).  The examiner is guided by her expertise, training, and experience in determining which questions she needs to ask in order to form opinions to a reasonable degree of certainty in her field.  Indeed, Dr. Gold has stated that the standard of care in her field *requires* that she inquire about the events that are alleged to be the cause of the emotional distress.  *See* Ex. 3, Gold Decl. ¶¶ 4, 8.

Courts are not "qualified, by training or experience, to second-guess the professional judgment of a board-certified psychiatrist with …years of experience" regarding the manner of conducting an examination.  *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 363 (D. Colo. 2004).  Moreover, "for the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations." *Lahr v. Fulbright & Jaworski, L.L.P,* 164 F.R.D. 196, 202 (rejecting plaintiff's request to limit the scope of Rule 35 psychological examination as too intrusive and overbroad); *see also Abdulwali,* 193 F.R.D. at 14-15 (declining request by plaintiff-mother who alleged emotional distress from death of her child in accident to limit scope, manner, and length

of exam, including request to preclude examiner from asking any questions concerning the accident and restrict his examination to prior and subsequent mental history); *Powers v. Chase Bankcard Services, Inc.*, No. 2:10-cv-322, 2011 WL 1882365, at *2 (S.D. Ohio May 17, 2011), (refusing plaintiff's request to limit scope of Rule 35 exam to particular time frame, prohibit the administration of a test to show malingering, and prohibit questioning about plaintiff's history of sexual abuse); *Hart v. Roundy's Supermarkets Inc.,* No. 10-C-824, 2011 WL 3687622, at *3 (E.D. Wis. Aug. 23, 2011) (no basis to support plaintiff's supposition that Rule 35 examination would be overreaching in manner, scope or duration; examiner would use professional judgment to determine questioning and appropriate tests to administer).

Courts have also expressly rejected the notion that such an exam is tantamount to a "second deposition," as Ms. Doe contends. *Abdulwali,* 193 F.R.D. at 14-15.   Indeed, Dr. Gold has explained in her Declaration that her interview has a different purpose than a deposition. Exhibit 3, Gold Decl. ¶ 8.   As the *Abdulwali* court pointed out, the concern that such an examination would be used as a second deposition is allayed by the safeguards that are built into Rule 35, specifically counsel's ability to confer with plaintiff about what happened in the exam, to review the examining doctor's report, in accordance with Rule 35, to depose the examining doctor, and to cross-examine the doctor at trial.   193 F.R.D. at 14-15.

Ms. Doe cannot meet her burden to show why the scope of Dr. Gold's examination should be limited in the manner she suggests.

### 2.     Ms. Doe Lacks Good Cause To Require Dr. Gold's Examination To Be Recorded.

Ms. Doe also cannot carry her burden to show why Dr. Gold's clinical interview with her should be recorded.   A party seeking the use of a recording device or the presence of observers at an independent mental examination bears the burden of showing good cause under Federal Rule

26(c).  *E.g., McKisset v. Brentwood BWI One LLC*, Civ. Case No. WDQ-14-1159, 2015 WL 8041386, at *3 (D. Md. Dec. 4, 2015); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 630 (D. Kan. 1999).

The majority of federal courts have held that the presence of a third party or a recording device subverts the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's medical or mental status.  *McKisset*, 2015 WL 8041386, at *3 (collecting cases).  Courts following the majority rule have "noted the importance of maintaining the majority rule to carry out the Federal Rules' intention that the character of the IME not be adversarial."  *Id.* at *4 (collecting cases).  Even the minority of courts that have allowed recording devices or the presence of third persons have recognized that this is the exception and based their holdings on the particular facts present in those cases.  *See id.*

As Dr. Gold's declaration states, she does not record her clinical interviews; nor does she have the equipment to do so.  Ex. 3, ¶ 5.  Ms. Doe has not provided recordings of her interviews with her own treating or retained experts.  This confirms that recording is a significant deviation from standard practice and would not create a level playing field for the School Board to obtain an independent assessment of Ms. Doe's claimed emotional injuries.

IV.  **<u>CONCLUSION</u>**

The School Board respectfully asks the Court to grant this motion, and compel Ms. Doe to undergo a Rule 35 examination with Dr. Gold at 10 a.m., on February 15, 2019, or at another mutually-convenient date or time on or before February 15, 2019, and further to order that such examination not be recorded or limited to only those questions not covered in Ms. Doe's deposition.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By:_____/s/_____

Sona Rewari (VSB No. 47327)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1974
Facsimile: (703) 918-4018
srewari@huntonak.com

*Counsel for Defendant*
*Fairfax County School Board*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.


/s/<br>
Sona Rewari (VSB No. 47327)