## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-614 (LOG/MSN) |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION IN _LIMINE_**

Defendant Fairfax County School Board ("the School Board") respectfully moves this Court in _limine_ to preclude Plaintiff Jane Doe from discussing in her opening statement, and from soliciting or offering at trial any testimony, evidence, statement or argument concerning the following:

**A.      MIL #1: The 2014 Voluntary Resolution Agreement With the Department of Education Office of Civil Rights.**

The Court should preclude Doe from introducing any argument or evidence about the 2014 Voluntary Resolution Agreement ("VRA") with the U.S. Department of Education Office of Civil Rights ("OCR"), which resolved a 2012 administrative complaint by the mother of a student at a middle school. The VRA expressly stated that OCR "has made _no determination_ that the Division has violated Title IX or any other law enforced by OCR" and set forth the parties' agreement that the VRA "_does not constitute and is not to be interpreted as any acknowledgement or admission of noncompliance with applicable law or liability on the part of the Division or its employees_." _See_ Dkt. #42-2, at 1 (emphases added).  Evidence of the VRA should be precluded under Rules 401, 403, and 408, of the Federal Rules of Evidence.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This case arises out of an incident that occurred three years after the VRA, in March 2017, involving two students at Oakton High School. To prevail in this case, Doe must prove that (1) she suffered sexual harassment so severe, pervasive, and objectively offensive as to "deprive [her] of access to ... educational opportunities or benefits," (2) the School Board had actual knowledge of that harassment, and (3) it was "deliberately indifferent" to the harassment, which indifference in turn caused her to undergo further sexual harassment or make her liable or vulnerable to it. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633, 644-45, 650 (1999).

The Supreme Court has expressly stated that noncompliance with the Department of Education's administrative requirements—including the requirements regarding sexual harassment policies and grievance procedures—"does not establish the requisite actual notice and deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998). Abiding *Gebser,* the Fourth Circuit has held that a plaintiff cannot use evidence of noncompliance with policies to prove a Title IX deliberate indifference claim. *Doe v. Bd. of Educ. of Prince George's Cty.*, 605 F. App'x 159, 169 (4th Cir. 2015).

Nor have courts allowed evidence of a VRA to prove deliberate indifference to a specific act of harassment. *Berry v. Mission Grp. Kan., Inc.*, 463 F. App'x 759, 769 (10th Cir. 2012) (unpublished disposition) (evidence of earlier Title IX Resolution Agreement, and alleged failure to implement sexual harassment policy as required by that Agreement, not relevant to Title IX retaliation action; any relevance substantially outweighed by potential for unfair prejudice).

The VRA is not relevant to any issue in this case. The OCR complaint that led to the VRA had nothing to do with Doe, Smith, or any of the personnel at Oakton High School who

Case 1:18-cv-00614-LO-MSN   Document 191   Filed 06/28/19   Page 3 of 12 PageID# 3305

addressed the March 2017 incident.  Nor was the underlying conduct that led to that complaint the same as what is involved in this case.

Any potential probative value of the VRA is far outweighed by its prejudicial effect. Fed. R. Evid. 403.  Because the VRA involves a governmental agency, a jury could easily be misled or confused about its bearing on the issues in this case.

The VRA also should be excluded under Rule 408 and the public policy underlying that rule. In just the years 2013 and 2014, OCR entered into a total of 1,310 resolution agreements with covered institutions.[1]  Were such resolution agreements to become admissible as evidence in private actions like Doe's, school systems would be discouraged from agreeing to them.  *See* Fed. R. Evid. 408 Advisory Comm. Notes ("The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position.").  The Court, therefore, should preclude Doe from referring to the VRA in her opening statement and from introducing any evidence about it.

**B.**     **MIL #2:  Testimony by Doe's Friends About What Doe Told Them**

The Court should preclude Doe from referencing her alleged prior consistent statements to her friends, V.S., K.D. B.M., E.J., and A.K., about the March 8, 2017 incident. The declarations that Doe has obtained from V.S., K.D. B.M., E.J., and A.K., purport to relay what Doe told them had happened during the March 8, 2017 incident, not what these friends themselves saw or heard. *See* ECF Nos. 160-3, ¶¶ 5-6, 9; 160-4, ¶¶ 4, 6, 11; 160-16, ¶¶ 4, 7, 10-11, 13, 15, 18; 160-17, ¶¶ 4-8, 10, 12; 160-33, ¶¶ 4-9, 12, 14-15 (Declarations) [SUMF ## 27-28, 30]. Doe's statements to her friends are inadmissible hearsay.

---

[1] U.S. Dep't of Education Office for Civil Rights, *Protecting Civil Rights, Advancing Equity*: *Report to the President and Secretary of Education Under Section 203(b)(1) of the Department of Education Organization Act, FY 13-14, Washington, DC* (2015), Appendix: Index of Cases Resolved with Agreements (publicly available at http://www.ed.gov/ocr) (last visited June 28, 2019).

"Hearsay" is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). What Doe said to her friends is plainly hearsay. And she intends to use her statements to prove that the March 8, 2017 incident occurred in the way she described it to her friends—i.e., to prove the truth of the matter asserted. That is classic inadmissible hearsay, and it should be excluded. *See Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1335-42 (M.D. Ga. 2007) (excluding "classic" hearsay statements of non-party witnesses in Title IX case).

## C.   <u>MIL #3:  Discussions Among A.K., a Teacher, and Security Staff.</u>

The Court should preclude Doe from referring in her opening statement to, or introducing evidence regarding, the March 10, 2017 conversations between former student A.K. and teacher Laura Kelly, and between A.K. and Oakton security staff, at Oakton High School, while Doe and Smith were in Indianapolis on the band trip. Neither Kelly nor the security officers were School Board officials whose knowledge counts for purposes of a Title IX claim. Allowing evidence of what A.K. told them would mislead the jury and be unfairly prejudicial to the School Board.

To be liable under Title IX for student-on-student sexual harassment, a school system must have actual knowledge of that harassment. *Davis*, 526 U.S. at 647-48. Actual knowledge cannot be imputed to a school system based on the knowledge of just any employee; the U.S. Supreme Court has rejected the use of agency principles or constructive knowledge under Title IX. *Gebser*, 524 U.S. at289-90; *Davis,* 526 U.S. at 642. Rather, Title IX liability requires actual knowledge of the harassment by "an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* at 290; *Baynard v. Malone*, 268 F.3d 228, 238-39 (4th Cir. 2001).

None of the individuals to whom A.K. spoke on March 10, 2017 had such authority. According to A.K.'s declaration, the individuals he spoke to were: (a) his math teacher, Laura Kelly; (b) Wally Baranyk, Oakton's Safety & Security Specialist; (c) two people in the security

office whose identities he does not remember, though he believes one of them to be School Resource Officer, Darrell Estess.   None of them was an official with the authority to take corrective action under *Gebser*.

Under the School Board's policies and regulations, teachers do not have the authority to take disciplinary actions against students. *See* 2016-17 Student Rights & Responsibilities (SR&R), ECF 148-6, at 21; Ex. 1, Deposition of Laura Kelly at 86:9-87:13.   Moreover, neither Doe nor Smith were Kelly's students.   Ex. 1 at 51:11-52:7. Security personnel like Baranyk also do not have the authority to discipline students, to remove a student from school, suspend, or expel a student.   *See* SR&R, ECF 148-6, at 21; Ex. 2, Deposition of Wally Baranyk at 41:5-8. Like Kelly, Baranyk also was not on the band trip.   Ex. 2, at 60:4-14.   Estess, the SRO, is not even an employee of the School Board.   Ex. 3, Deposition of Darrell Estess at 5:9-6:1; 10:14-20.

Whatever A.K. may have told Kelly, Baranyk and Estess is not relevant because none of them were officials whose knowledge constitutes actual notice to the School Board under Title IX.   *Baynard,* 268 F.3d at 238-39 (because Virginia law authorizes only the school board to hire, fire, transfer or suspend a teacher, notice to school principal about potential teacher-on-student harassment did not constitute actual notice to school board under Title IX); *Ross v. Univ. of Tulsa,* 859 F.3d 1280, 1288-92 (10th Cir. 2017) (report of sexual assault to university's security officer did not constitute notice for purposes of Title IX claim), *cert. denied*, 138 S. Ct. 1267 (2018); *Joyce v. Wright State Univ.,* 3:17-CV-387, 2018 WL 3009105, at *9 (S.D. Ohio June 15, 2018) (same, with respect to report of sexual assault to university police officer); *Garcia v. Navasota Indep. Sch. Dist.*, No. H-09-3892, 2011 WL 335253, at *10-11 (S.D. Tex. Jan. 31, 2011) (notice of harassment to employees who have no authority beyond reporting misconduct to other employees is insufficient to expose school district to Title IX liability); *Alegria v. Texas,*

No. G-06-0212, 2007 WL 3256586, at *4 (S.D. Tex. Nov. 2, 2007) (same; appropriate official with authority to remedy harassment must have notice), *aff'd in part*, 314 F. App'x 687 (5th Cir. 2009); *Corp. of Mercer Univ.*, 506 F. Supp. 2d at 1352 n.43 (noting that teachers, coaches or school employees are not generally "appropriate individual[s]" for notice purposes under Title IX).

If A.K.'s discussions with Kelly and security officers had any probative value for Doe's Title IX claim, it is far outweighed by the tremendous risk of jury confusion and unfair prejudice to the School Board. Fed. R. Evid. 403. The jury will not be told until the end of the case the legal standards under Title IX, and whose "actual knowledge" counts for purposes of Title IX liability. Allowing Doe to present arguments and evidence of A.K.'s discussions with individuals whose knowledge is legally immaterial will be misleading to the jury. It is often impossible to correct a wrong impression once planted in the minds of jurors, so the risk of unfair prejudice is high. The Court, therefore, should preclude Doe from referring to, or introducing any evidence of, A.K.'s conversations with Kelly, or the security staff at Oakton.

## D.      MIL # 4:  Kelly's Discussion with Baranyk

For the same reasons, the Court should also preclude Doe from referring in her opening statement to, or introducing evidence regarding, Kelly's discussion with Baranyk on March 10, 2017. As discussed above, neither Kelly nor Baranyk is a person whose knowledge counts as the School Board's knowledge for Title IX liability purposes, which is the sole claim in this case. Evidence of what Kelly said to Baranyk, or vice-versa, is not probative of any issues, risks jury confusion, and is unfairly prejudicial to the School Board. That evidence should be precluded under both Rules 401 and 403.

E.    **MIL #5:  Principal Banbury's Off-Color Email to Taylor**

In an email communication with Assistant Principal Michelle Taylor on March 12, 2017, Principal Banbury made an off-color comment that touched on the March 8, 2017 incident. Taylor asked for a guess on how many inches of snow he expected.  He replied "On the ground or under the blanket?"  ECF No. 160-15. Doe has identified this email as her Proposed Exhibit 9. She has also trumpeted it in media interviews about this lawsuit. Ex. 4, Tim Barber, *"Insulting and Abusive": Fairfax County Schools Faces a Lawsuit Over Alleged Bus Assault*, ABC7, June 13, 2019, https://wjla.com/news/local/fairfax-county-schools-lawsuit-over-alleged-bus-assault.

That "evidence" should be precluded under Rules 401 and 403. It is undisputed that, at the time Dr. Banbury sent that email, he had been told that two students had engaged in *consensual* sexual activity on the bus, while huddled under a blanket.  ECF No. 148, at 11 [SUF##52-53].  The exhibit is thus not relevant to show that that Principal Banbury stood idly by in the face of known student-on-student harassment.

As discussed above, a school system can be liable in damages under Title IX for student-on-student harassment only for its *own* intentional decision to remain idle in the face of known acts of harassment; its liability *cannot* be premised on constructive knowledge or vicarious liability.  *Gebser*, 524 U.S. at 285.  Liability requires that "an official of the school district who at minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent" to the harassment. *Id.* at 277; *Davis*, 526 U.S. at 646-47.  Banbury's email thus has no probative value to the Title IX claim because there is no evidence that Banbury had actual knowledge of the alleged harassment at the time he wrote the email.

Even assuming for argument's sake that Banbury's email had a sliver of probative value, it is greatly outweighed by its prejudicial effect.  Banbury's email is highly inflammatory and

hugely prejudicial to the School Board.  Indeed, this is why Doe's counsel have trumpeted it in media interviews.  *See* Ex. 4.  Doe undoubtedly intends to arouse the jury's passions and indignation by talking about it at trial.  Evidence of Banbury's comment would confuse the jury and suggest that the School Board may be found liable based on the conduct of an official *without* actual knowledge of harassment, in contravention of the Supreme Court's decisions in *Gebser* and *Davis*.  The Court should, therefore, preclude Doe from referring in her opening statement, and from offering any evidence, about the Banbury email.

**F.**      **MIL #6:  Text Message by Officer Estess**

For the same reason, the Court should also preclude Doe from referring to or offering evidence relating to a text message sent by School Resource Officer Estess to Assistant Principal Taylor.  ECF No. 142 (Plaintiff's proposed Exhibit 4).  In the context of telling Taylor that there had been report of a "sex act on one of your buses" but "no names yet," Estess texted the phrase, "one time at band camp," a reference to the movie *American Pie*.  Ex. 3, at 43:18-44:4; Ex. 5, Deposition of Michelle Taylor at 153:14-158:22.

The "band camp" remark by Estess has no probative value to this Title IX case against the School Board. Doe has argued in her summary judgment papers that Estess was "mocking" Doe and that his joke demonstrates deliberate indifference by the School Board.  But Estess is not even an employee of the School Board. Ex. 3, at 5:9-6:1; 10:14-20.  His comment is not probative of any fact relevant to Doe's Title IX claim against the School Board. Even if Doe could muster some theory for its relevance, it would be far outweighed by the unfair prejudice to the School Board.  Fed. R. Evid. 403.

G.      **MIL #7:  Any Evidence Relating to Reports of "Sexting" by Smith**

The Court should preclude any evidence relating to the history of "sexting" between Doe and Smith, or between Smith and anyone else. The alleged "sexting" between Doe and Smith occurred during a prior school year, and Doe admits that she did not complain about it to any School Board employee, or even to Smith himself.  *See* ECF No. 162, at 5. She also admits that she is not claiming the School Board should have foreseen the March 8, 2017 incident with Smith.  ECF No. 148, at 26 [SUF #143].

Introduction of these prior acts of "sexting" would serve no purpose other than to confuse the jury by conflating the unreported, irrelevant "sexting" with the bus incident.  Any evidence relating to "sexting" would be inflammatory and unduly prejudicial to the School Board and should be excluded pursuant to Fed. R. Ev. 403.  *See Nave v. Indep. Sch. Dist. No. 2 of Leflore Cty.*, No. CIV-17-096, 2018 WL 6445476, at *1 (E.D. Okla. Dec. 10, 2018) (granting motion in *limine* to exclude evidence of teacher's sexual relationship with any student other than plaintiff in absence of any evidence that school district had knowledge of such relationships); *Corp. of Mercer Univ.*, 506 F. Supp. 2d at 1343 (excluding statements of plaintiff's friend about sexual assault because there was no evidence that declarant relayed such information to university).

**H.**     **MIL #8:  Doe's Use of Her Homemade Videos of Depositions**

Doe advised the School Board in a call on June 21, and by letter of June 27, that she intends to present deposition testimony using video-recordings that were made by her own counsel, with their own video camera, instead of the transcripts recorded by the court-certified stenographers who attended the depositions.  The Court should preclude the use of Doe's homemade recordings because they do not comply with Federal Rule of Civil Procedure 30, and are not properly authenticated as required by Fed. R. Ev. 901.

Under Rule 30, depositions must be conducted before an officer appointed or designated under Rule 28 to administer oaths and take testimony, who follows the procedures set forth in Fed. R. Civ. P. 30(b)(5)(A). Doe's counsel were not such officers. The officers before whom the depositions were conducted were the stenographers who certified only their written transcripts.

Depositions that are recorded non-stenographically are subject to additional requirements: "the officer must repeat the items in Rule 30(b)(5)(A)(i)-(iii) at the beginning of each unit of the recording medium.  The deponent's and attorneys' appearance or demeanor must not be distorted through recording techniques." Fed. R. Civ. P. 30(b)(5)(B). At the conclusion of the deposition, the officer "must set out any stipulations made by the attorneys about custody of the transcript or recording and of the exhibits, or about any other pertinent matters."  Fed. R. Civ. P. 30(b)(5)(C).  The recordings made by Doe's counsel do not comply with these requirements either.

Rule 30(e) also requires that the deponent be allowed an opportunity to request to review the transcript or recording, and must be allowed 30 days to make any changes.  While the stenographers offered such opportunity to review the transcripts, no such opportunity was offered to the deponents regarding the recordings being made by Doe's counsel.

Finally, the officer must prepare a written certification to the effect that the deposition accurately records the witness's testimony, which must accompany the packaged, sealed record of the deposition. Rule 30(f). No such certification was made for the recordings made by Doe's counsel. Nor could it be, as Doe's counsel are not authorized officers under Rule 28. The recordings made by Doe's counsel were not subject to any quality controls and bear none of the indicia of authenticity required by Rule 30. They were not made available to the School Board, and even if they had been, the School Board has no way to ensure that the recordings were accurate and have not been altered.

The only properly authenticated, certified copies of the depositions taken by Doe are those prepared by the officers certified under Rule 28, who provided the School Board with copies of the transcripts, and who certified their accuracy. The Court should preclude Doe from presenting her counsel's homemade recordings of depositions taken in this case.

**CONCLUSION**

The School Board respectfully requests that the Court grant the relief requested herein.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By: _____/s/_____
Sona Rewari (VSB No. 47327)
Andrea R. Calem (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1974
Facsimile: (703) 918-4018
srewari@huntonak.com
acalem@huntonak.com
*Counsel for Defendant*
*Fairfax County School Board*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of June, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.


_____/s/_____
Sona Rewari (VSB No. 47327)