**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE,         ) | |
|         ) | |
|     Plaintiff,    ) | |
|         ) | |
| v.         ) | Civil Action No. 1:18-cv-614 (LOG/MSN) |
|         ) | |
| FAIRFAX COUNTY SCHOOL BOARD,  ) | |
|         ) | |
|     Defendant.   ) | |
|         ) | |

**PLAINTIFF'S MEMORANDUM IN PARTIAL OPPOSITION TO DEFENDANT'S**
**MOTION TO APPROVE DEFENDANT'S INSTRUCTIONS JJ, KK AND LL**

Plaintiff files this response in partial opposition to Defendant's "Motion For Approval Before Opening Statements Of Defendant's Proposed Jury Instructions JJ, KK, and LL." Dkt. #266.

Plaintiff does not object to Defendant's Proposed Instruction JJ, which reads:

Title IX of the Education Amendments Act of 1972 provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance.

However, Plaintiff opposes the use of Defendant's Instructions KK and LL (they are, *inter alia*, misleading and incomplete), as well as Defendant's attempt to use the Court's ruling on the jury instructions as part of any demonstrative exhibit for Defendant to state to the jury what the law is, as Defendant appears to want to do via its proposed demonstrative exhibit 3 provided to counsel on Sunday. *See* Ex. 1.

I.      **The Court Should Not Give Instruction KK, Or, Alternatively, Should Give It In Conjunction With the "Deliberate Indifference" Standard for Liability.**

Citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999), Defendant's

proposed Instruction KK states:

> A school board is liable under Title IX only for its own misconduct.  A school board is not liable for the actions of a student who sexually harasses another student.  It is liable only for its own decision to remain idle in the face of known student-on-student harassment.

But this is an incomplete amalgamation from two separate paragraphs in *Davis* and does not

provide the standard for liability under Title IX as set forth in *Davis*.  Defendant cites only the

background for what the Supreme Court was considering in *Davis*.  Leading up to the quote in

Defendant's cite, the Supreme Court set the stage as follows:

> Here, however, we are asked to do more than define the scope of the behavior that Title IX proscribes. We must determine whether a district's failure to respond to student-on-student harassment in its schools can support a private suit for money damages. *See Gebser v . Lago Vista Independent School Dist.*, 524 U.S. 274, 283 (1998) ("In this case, . . . petitioners seek not just to establish a Title IX violation but to recover damages . . ."). This Court has indeed recognized an implied private right of action under Title IX, *see Cannon v. University of Chicago*, *supra*, and we have held that money damages are available in such suits, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992). Because we have repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause, however, *see, e.g., Gebser v. Lago Vista Independent School Dist.*, *supra*, at 287 (Title IX); *Franklin v. Gwinnett County Public Schools*, *supra*, at 74-75, and n. 8 (Title IX); *see also Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 598-599 (1983) (opinion of White, J.) (Title VI), private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue.  When Congress acts pursuant to its spending power, it generates legislation "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State School and Hospital v . Halderman*, 451 U.S. 1, 17 (1981). In interpreting language in spending legislation, we thus "insis[t] that Congress speak with a clear voice," recognizing that "[t]here can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it." *Ibid.*; *see also id.*, at 24-25.

> Invoking *Pennhurst*, respondents urge that Title IX provides no notice that recipients of federal educational funds could be liable in damages for harm arising from student-on-student harassment. Respondents contend, specifically, that the statute only proscribes misconduct by grant recipients, not third parties. Respondents argue, moreover, that it would be contrary to the very purpose of Spending Clause legislation to impose liability on a funding recipient for the misconduct of third parties, over whom recipients exercise little control. *See also Rowinsky v. Bryan Independent School Dist.*, 80 F.3d, at 1013.

*Davis*, 526 U.S. at 640.  It is at that point that the Supreme Court states:

> We agree with respondents that a recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The recipient itself must "exclud[e] [persons] from participation in, . . . den[y] [persons] the benefits of, or . . . subjec[t] [persons] to discrimination under" its "program[s] or activit[ies]" in order to be liable under Title IX. . . .
>
> We disagree with respondents' assertion, however, that petitioner seeks to hold the Board liable for G. F.'s actions instead of its own. Here, petitioner attempts to hold the Board liable for its own decision to remain idle in the face of known student-on-student harassment in its schools.

*Davis*, 526 U.S. at 640-41.  But this section of the opinion did not identify the conduct — and the standard to identify that conduct — which triggers liability under Title IX in a case like this one.

The Supreme Court in *Davis* made clear that it was the funding entity's "deliberate indifference"[1] (not the "remaining idle" language Defendant would have this Court use) that constitutes the "misconduct" to trigger Title IX liability:

> We consider here whether the misconduct identified in *Gebser* — deliberate indifference to known acts of harassment — amounts to an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is a student rather than a teacher. We conclude that, in certain limited circumstances, it does.

*Ibid.*, at 643.  It was after an extended discussion of *Gebser* and other background principles that the Court held:

---

[1] This also belies counsel for Defendant's suggestion to the Court in its July 12, 2019 hearing that the question is not about the funding recipient, but needing to prove a high up school official himself was deliberately indifferent.  *See* Ex. 2.

> We thus conclude that recipients of federal funding may be liable for "subject[ing]" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority.

*Davis*, at 526 U.S. at 646-67.

> The *Davis* Court then explained what "deliberately indifferent" means in this context:

> School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.

*Id.*, at 648.  The Supreme Court specifically called this a "standard" for evaluating deliberate indifference in the very next sentence after that just quoted.  *Id.*  Indeed, it stated in the same paragraph that "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."  *Id.*

As is clear, Defendant's Proposed Instruction KK misleads the jury to believe that a funding entity cannot be held "liable for the actions of a student who sexually harasses another student" and that only the school's "remaining idle" opens the door to liability.  That is not the law.  Indeed, *Davis* held that a school <u>could be held liable</u> for peer harassment when the school is "deliberately indifferent" in that its response – or lack thereof – is "clearly unreasonable in light of the known circumstances."  *Id.*  The Court should not give the instruction.

Should the Court decide to give the instruction, then it should be coupled with a statement that Defendant may be held liable when the school is "deliberately indifferent," in that its response – or lack thereof – is "clearly unreasonable in light of the known circumstances."  This would provide needed context for the jury to evaluate the Title IX claim by providing the actual standard for determining liability as stated in *Davis*.

**II.     The Court Should Not Give Instruction LL, Or, Alternatively, Should Rule on Plaintiff's Competing Instruction Nos. 4 and 4A-C and Also Provide An Instruction Regarding "Actual Notice."**

Defendant's Proposed Instruction LL also should not be provided.  Among other things, it does not contain the full context for what is required to prove a Title IX claim.  Any instruction on the elements of a Title IX claim must be coupled with other instructions to ensure the jury has a fair and informed view of what the law requires.  And the parties are currently at loggerheads regarding those other elements, including regarding Plaintiff's proposed instructions 4, 4A-4C and Defendant's Proposed Instructions.

Even if the Court is inclined to provide Proposed Instruction LL, it should be coupled with an instruction, among others, that states:

> An educational institution has "actual notice," sometimes called "actual knowledge" of discrimination, if an appropriate person at the institution has knowledge of facts so that the institution can reasonably be said to be aware of the alleged harassing conduct.

*See* Kevin O'Malley, Jay E. Grenig & Hon William C. Lee, 3C Fed. Jury Prac. & Instr. § 177:36 ("Actual Knowledge") (6th ed. 2011 & Supp. Aug. 2018).

In a bench brief filed tonight, Defendant objects to a straightforward description of what "actual knowledge" means by citing to an inapposite teacher-on-student case decided by the Fourth Circuit, *Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001).  Dkt. #275 at 3.  But accepting Defendant's argument would be error.  The Fourth Circuit has not extended *Baynard* to a student-on-student case.  The School Board already has acknowledged the inapplicability of *Baynard*. Here, assistant principals are "appropriate persons," even under Defendant's standard. In *Baynard*, the court came to an entirely inapposite conclusion in a case where a teacher harassed a student: "[c]ritically absent from the scope of a principal's authority, however, are the powers that would make a principal the proxy of the school district: the power to hire, fire, transfer, or suspend

teachers. In Virginia, those powers are reserved exclusively to the school district; a principal may only make recommendations regarding such matters." *Baynard v. Malone*, 268 F.3d 228, 238-39 (4th Cir. 2001). Even in a similar case, a district court in this Circuit found *Baynard* inapplicable:

> *Gebser* did not declare that "corrective measures" are limited to terminating, transferring, or suspending the employee committing the harassment or abuse, and the Third Circuit has found that "[t]he authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board official at the very least." *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002). The Eleventh Circuit has stated that the question of who is an appropriate person with authority to take corrective measures is a factual issue, but that the majority of circuits have concluded that principals have sufficient authority to impute liability to their school boards. *KB v. Daleville City Bd. of Educ.*, 536 F. App'x 959, 962-63 (11th Cir. 2013) (unpublished).
>
> *Jennings* appears to have impliedly overruled *Baynard* by applying a different analysis. *Jennings* involved a university rather than a public school, and it was a North Carolina case, so the Virginia statute relied upon in *Baynard* obviously did not apply. Even so, the full Fourth Circuit decided the *Jennings* case without ever mentioning the hiring and firing authority that was central to the panel's decision in *Baynard*. Based on *Jennings*, I conclude that *Baynard* is no longer good law as to Title IX.

*Doe v. Russell Cty. Sch. Bd.*, No. 1:16CV00045, 2017 U.S. Dist. LEXIS 56479, at *16-17 (W.D. Va. Apr. 13, 2017); *Doe v. Russell Cty. Sch. Bd.*, No. 1:16CV00045, 2018 U.S. Dist. LEXIS 23392, at *38 (W.D. Va. Feb. 13, 2018). *See, e.g., Hill v. Cundiff,* 797 F.3d 948, 971 (11th Cir. 2015) (holding that assistant principal is "appropriate person" where principal and assistant principal alone possess authority to discipline students for sexual harassment); *Swanger v. Warrior Run School Dist.*, 137 F.Supp.3d 737, 752 (M.D. Pa. 2015) ("[B]ased on the record and solely for purposes of conducting a full analysis, the Court will assume that both Principal Cross and Assistant Principal Bertanzetti may constitute an 'appropriate person.'"), *rev'd and remanded on other grounds,* 659 Fed.Appx. 120 (3d Cir. 2016); *Seiwert v. Spencer-Owen Cmty. School Corp.*, 497 F.Supp.2d 942, 954 (S.D. Ind. 2007) (denying defendant's motion for summary judgment on

Title IX claim where assistant principal was aware of discrimination). Defendant's suggestion that *Baynard* applies a heightened notice standard to Title IX claims is wrong – who may be an appropriate person does not change the amount of notice needed to trigger an obligation to act.

In its most recent student-on-student Title IX case, the Fourth Circuit used the word "on notice" in its deliberate indifference analysis:

> As for the listening circles, we agree that university administrators listening to students' reports of harassment and threats is an important step in seeking to rectify a sexually hostile environment. But the mere act of listening to students is not a remedy in and of itself. *See S.B. ex rel. A.L.*, 819 F.3d at 77 (observing that "half-hearted investigation or remedial action" is insufficient to shield school from Title IX liability). Significantly, after the Feminists United members placed the UMW administration <u>on notice</u> of the hostile environment permeating the campus, the University made no real effort to investigate or end the harassment and threats . . .

*See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 690 (4th Cir. 2018) (emphasis added).

**III.    The Court Should Not Allow Defendant To "Educate" the Jury on Title IX Law.**

Finally, it appears the request to have the Court rule on limited parts of the jury instructions at this time was to allow Defendant to argue the law to the jury in its opening statement. The Court should not allow Defendant to use the Court's preliminary (or final) ruling on jury instructions to be used in opening to "educate" the jury on what the law is under Title IX. That is the Court's function, and not counsel's role. It may not be done in piecemeal fashion without a full set of jury instructions that fully explain the applicable law. It would be one thing if the parties use the Court's rulings on jury instructions to create an opening statement that forecasts evidence that will be introduced at trial to meet those instructions, *without argument*. It is entirely different if a party tries to put on a PowerPoint presentation on what Title IX law is, as defendant apparently intends to do.

**Conclusion**

In conclusion, Plaintiff agrees with Defendant's Proposed Instruction JJ.

In regard to Defendant's Proposed Instruction KK, the Court should not give that instruction because it will confuse and mislead the jury by implying a defendant in a Title IX case can never be held liable in cases such as this unless it "remains idle," which is not the standard set forth in *Davis* for holding funding entities liable in cases such as this. If the Court decides to give Proposed Instruction KK, the Court should do so only by combining it with an instruction that makes clear that an entity like Defendant can be held liable if it is shown that Defendant acted with deliberate indifference, and then providing Plaintiff's Instruction 4C to specify what "deliberate indifference" is.

The Court also should not give Defendant's Proposed Instruction LL, without also providing the instructions that clarify what the elements are, including by providing the instruction that: "An educational institution has "actual notice," sometimes called "actual knowledge" of discrimination, if an appropriate person at the institution has knowledge of facts so that the institution can reasonably be said to be aware of the alleged harassing conduct." *See* O'Malley, §177:36; *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 690 (4th Cir. 2018).

Date: July 29, 2019                    Respectfully submitted,

                                       ATES LAW FIRM, P.C.

                                         */s/ John R. Ates*
                                       John R. Ates (VSB #71697)
                                       1800 Diagonal Road, Suite 600
                                       Alexandria, Virginia 22314
                                       703-647-7501 (tel)
                                       703-229-6430 (fax)
                                       j.ates@ateslaw.com

                                       PUBLIC JUSTICE, P.C.

   */s/ Adele P. Kimmel*
Adele P. Kimmel (admitted *pro hac vice*)
1620 L Street NW, Suite 630
Washington, D.C. 20036
(202) 797-8600 (tel)
(202) 232-7203 (fax)
akimmel@publicjustice.net

CORREIA & PUTH, PLLC

   */s/ Linda M. Correia*
Linda M. Correia (admitted *pro hac vice*)
Lauren A. Khouri (admitted *pro hac vice*)
1400 16th Street NW, Suite 450
Washington, D.C. 20036
 (202) 602-6500 (tel)
 (202) 602-6501 (fax)
lcorreia@correiaputh.com
lkhouri@correiaputh.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, I served the foregoing with the Court's CM/ECF system, which will send electronic notice of the filing to counsel of record:

Sona Rewari
Stuart Raphael
Andrea Calem
Hunton Andrews Kurth LLP
8405 Greensboro Drive, Suite 140
Tysons Corner, VA  22102
srewari@huntonak.com
acalem@huntonak.com
sraphael@huntonak.com
*Counsel for Defendant*

   */s/ John R. Ates*
John R. Ates (VSB #71697)
*Counsel for Plaintiff*