# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JANE DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18-cv-614 (LOG/MSN) |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION
## TO PLAINTIFF'S EMERGENCY MOTION
## TO CONTACT JURORS PURSUANT TO LOCAL RULE 47(C)

Sona Rewari (VSB No. 47327)
Stuart A. Raphael (VSB No. 30380)
Andrea R. Calem (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (703) 918-4018
srewari@HuntonAK.com
sraphael@HuntonAK.com
acalem@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

August 14, 2019

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .........................................................................................................1

ARGUMENT .................................................................................................................2

I.      Post-trial contact with jurors is strongly disfavored. ..........................................2

        A.    Juror contact is not permitted except in the limited case of improper outside influence, which has not been shown or even alleged here. ....................................2

        B.    Prohibiting post-trial contact with jurors serves the purpose of Federal Rule of Evidence 606(b) by precluding jurors from impeaching their verdict. ..............4

        C.    Numerous policy reasons militate against juror contact. ........................................6

II.     Courts consistently reject Plaintiff's proffered reasons for contacting jurors. ....................7

        A.    Furthering counsel's education is not a valid reason. ...............................................8

        B.    Alleged juror confusion does not warrant juror interrogation. .............................10

III.    If the Court departs from precedent and allows juror contact here, it should strictly limit the terms of such contact. ........................................................................................13

CONCLUSION AND  CONDITIONAL REQUEST FOR A HEARING ...................15

CERTIFICATE OF SERVICE ...................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. Ochsner Clinic Found.*,
   No. CIV.A 06-8517, 2010 WL 1552823 (E.D. La. Apr. 15, 2010)..........................................9

*Allen v. United States*,
   No. 4:07CV00027 ERW, 2008 WL 80061 (E.D. Mo. Jan. 4, 2008).......................................4

*Benson v. Tyson Foods, Inc.*,
   889 F.3d 233 (5th Cir. 2018) ..................................................................................................9

*Cadorna v. City & Cty. of Denver*,
   No. 04-cv-01067, 2009 WL 68560 (D. Colo. Jan. 8, 2009) ....................................................14

*Clyma v. Sunoco, Inc.*,
   No. 03-CV-809-TCK-PJC, 2010 WL 830923 (N.D. Okla. Mar. 4, 2010) .............................10

*CPR Assocs., Inc. v. Se. Pa. Chapter of Am. Heart Ass'n*,
   No. CIV.A. 90-3758, 1990 WL 210609 (E.D. Pa. Dec. 18, 1990)..........................................4

*Diettrich v. Nw. Airlines, Inc.*,
   168 F.3d 961 (7th Cir. 1999) ..........................................................................................13, 14

*Farmers Coop. Elevator Ass'n v. Strand*,
   382 F.2d 224 (8th Cir.), *cert. denied*, 389 U.S. 1014 (1967)...................................................11

*Farr v. Midwest Woodworking, Inc.*,
   No. 99-2526-JAR, 2002 WL 31466746 (D. Kan. Oct. 30, 2002).........................................4, 5

*Green Constr. Co. v. Kan. Power & Light Co.*,
   1 F.3d 1005 (10th Cir. 1993) ..................................................................................................2

*Haeberle v. Tex. Int'l Airlines*,
   739 F.2d 1019 (5th Cir. 1984) ..................................................................................... *passim*

*Haley v. Kundu*,
   No. 1:11-CV-265, 2013 WL 4039797 (E.D. Tenn. Aug. 7, 2013)...........................................5

*McDonald v. Pless*,
   238 U.S. 264 (1915)..................................................................................................................6

*Olsson v. A.O. Smith Harvestore Prods., Inc.*,
   696 F. Supp. 411 (S.D. Ind. 1986) ..........................................................................................9

*Peña-Rodriguez v. Colorado*,
    137 S. Ct. 855 (2017) ............................................................................................7

*Rakes v. United States*,
    169 F.2d 739 (4th Cir. 1948) ................................................................................7

*Robles v. Exxon Corp.*,
    862 F.2d 1201 (5th Cir. 1989) ............................................................................11

*Shoen v. Shoen*,
    933 F. Supp. 871 (D. Ariz. 1996) .......................................................................12

*Sixberry v. Buster*,
    88 F.R.D. 561 (E.D. Pa. 1980) ..........................................................................7, 9

*Tanner v. United States*,
    483 U.S. 107 (1987) ..............................................................................................3

*Team Contractors, LLC v. Waypoint NOLA, LLC*,
    No. CV 16-1131, 2019 WL 2210747 (E.D. La. May 22, 2019) ...........................4, 7

*United States v. Acker*,
    52 F.3d 509 (4th Cir. 1995) ..................................................................................3

*United States v. Ailsworth*,
    948 F. Supp. 1485 (D. Kan. 1996),
    *aff'd*, 138 F.3d 843 (10th Cir. 1998)...................................................................12

*United States v. Barber*,
    668 F.2d 778 (4th Cir. 1982) ................................................................................5

*United States v. Birchette*,
    908 F.3d 50 (4th Cir. 2018) ..................................................................................7

*United States v. Edelin*,
    283 F. Supp. 2d 8 (D.D.C. 2003) ........................................................................11

*United States v. Edwards*,
    486 F. Supp. 673 (S.D.N.Y.),
    *aff'd*, 631 F.2d 1049 (2d Cir. 1980)...................................................................12

*United States v. Enzinger*,
    800 F. Supp. 2d 335 (D. Me. 2011) ................................................................11, 13

*United States v. Gravely*,
    840 F.2d 1156 (4th Cir. 1988) ..............................................................................3

*United States v. Hayes*,
No. 2:06-cr-00010, 2007 WL 527660 (W.D. Va. Feb. 15, 2007)..............................................4

*United States v. McDougal*,
47 F. Supp. 2d 1103 (E.D. Ark. 1999) ...................................................................................7

*United States v. Patel*,
No. CRIM.A 06-60006, 2009 WL 1579526 (W.D. La. June 3, 2009) ...................................5

*United States v. Roane*,
378 F.3d 382 (4th Cir. 2004) ..................................................................................................3

*United States v. Sampson*,
332 F. Supp. 2d 325 (D. Mass. 2004) ..................................................................................12

*United States v. Smith*,
317 F. App'x 323 (4th Cir. 2008) ...........................................................................................3

*United States v. Smith*,
No. 7:05-cr-00028, 2007 WL 1189642 (W.D. Va. Apr. 20, 2007),
*aff'd*, 317 F. App'x 323 (4th Cir. 2008)................................................................................6

*United States. v. Tines*,
70 F.3d 891 (6th Cir. 1995),
*cert. denied*, 516 U.S. 1180 (1996) ....................................................................................11

*United States v. Vassar*,
346 F. App'x 17 (6th Cir. 2009) .............................................................................................5

## Other Authorities

L. Civ. R. 47(C) ......................................................................................................1, 2, 4, 13

Fed. R. Evid. 606 ................................................................................................... *passim*

Fed. R. Evid. 802 ...............................................................................................................10

Rachel Weiner, *Jury sides with Fairfax schools in case of alleged sexual assault on band trip*, WASH. POST, Aug. 9, 2019 .........................................................................10, 13

## INTRODUCTION

The Court should deny Plaintiff's emergency motion to permit her lawyers to contact the jurors who returned a verdict against her last Friday.  Plaintiff provides no adequate grounds for granting the motion, let alone any explanation why an "emergency" exists requiring such extraordinary relief.  She fails to cite a single case in support of her unusual request.

These deficiencies are not surprising, given that federal courts regularly reject efforts to peek behind the curtain of jury deliberations.  Prohibitions on juror contact like those in Local Civil Rule 47(C) rest on well-established principles.  And in the Fourth Circuit, the standard for jury contact is high: the requester must make a threshold showing that the jury was affected by an improper outside influence, a requirement Plaintiff's counsel cannot satisfy.  Federal Rule of Evidence 606(b) poses another obstacle.  It insulates jury deliberations from review by prohibiting jurors from testifying about their deliberations, including their mental processes and the factors influencing their votes—precisely the topics that Plaintiff's counsel wants to explore.

Moreover, the purported justifications for Plaintiff's motion are insufficient.  First, courts consistently reject motions for jury contact on the basis of furthering attorneys' education.  And although Plaintiff's lawyers profess that they seek only to improve their advocacy in *other* cases, their focus remains on the verdict in this case.  They signal that focus by relying on an otherwise irrelevant newspaper story that impugns the jury's decision, based on one juror's alleged concern about how some jurors interpreted the Court's trial instructions on "actual knowledge"—and about how they were allegedly led to a *different* interpretation after speaking with the Court after they were discharged.  But even if the Court could consider that newspaper story (which is inadmissible under Rule 606(b)), and even if the juror's account were plausible (which it is not), a juror's misunderstanding of the Court's instructions is not grounds to set aside the verdict.

Accordingly, there is no merit to Plaintiff's request, which should be denied in its entirety. Should the Court depart from precedent and allow juror contact, however, the Court should impose appropriate conditions, including precluding Plaintiff from using any information learned to attack the verdict. Accepting at face value Plaintiff's claim that the purpose is to educate counsel, Plaintiff's counsel would not be harmed by a prohibition on juror contact until after the deadline has passed for a new-trial motion in this case. As demonstrated below, however, the better course is the usual course: the motion should simply be denied.

## ARGUMENT

### I.      Post-trial contact with jurors is strongly disfavored.

#### A.      Juror contact is not permitted except in the limited case of improper outside influence, which has not been shown or even alleged here.

"Federal courts have generally disfavored post-verdict interviewing of jurors" and "have repeatedly refused to denigrate jury trials by afterwards ransacking the jurors in search of some new ground, not previously supported by evidence, for a new trial." *Haeberle v. Tex. Int'l Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984) (internal citation and punctuation omitted). Indeed, "courts have 'wide discretion' to restrict attorney-juror contact in order to shield jurors from post-trial 'fishing expeditions' by losing attorneys." *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005 (10th Cir. 1993). In light of such concerns, this Court, like many others, has adopted a local rule that prevents lawyers or their agents from interviewing jurors about their deliberations:

> **Communication With Jurors.** No attorney or party litigant shall personally, or through any investigator or any other person acting for the attorney or party litigant, interview, examine, or question any juror or alternate juror with respect to the verdict or deliberations of the jury in any civil action except on leave of Court granted upon good cause shown and upon such conditions as the Court shall fix.

L. Civ. R. 47(C).

2

In the Fourth Circuit, juror contact is permitted only where the party requesting it makes a threshold showing of "improper outside influence."  In *United States v. Gravely*, the Fourth Circuit upheld this Court's refusal to allow a defendant to interview jurors who had told the press that they rendered the verdicts "under extreme pressure" and based on "technicalities."  840 F.2d 1156, 1159 (4th Cir. 1988).  Noting that "[r]equests to impeach jury verdicts by post-trial contact with jurors are disfavored," the Fourth Circuit held that "Defendant's request was properly denied because he made no threshold showing of improper outside influence." *Id.* (citing *Tanner v. United States*, 483 U.S. 107 (1987)).  Nor could Gravely interview the jurors "to determine if the pressure and lack of adequate time for deliberation were self-imposed or the result of outside influence." *Id.*  As the court explained, "[w]ithout a threshold showing of improper outside influence, defendant's request is a mere fishing expedition . . . .  Defendant's suggested rule would allow a convicted defendant to interrogate the jury about occurrence of the not unlikely event of a juror publicly stating that contention was present in the jury room." *Id.*

*Gravely*'s requirement of "a threshold showing of improper outside influence" has been repeatedly acknowledged and followed in the Fourth Circuit.  *See, e.g.*, *United States v. Acker*, 52 F.3d 509, 516 (4th Cir. 1995) ("[C]ourts have consistently rejected juror affidavits or testimony about mental processes unless 'extraneous prejudicial information' or 'outside influence' is clearly present."); *United States v. Smith*, 317 F. App'x 323, 326 (4th Cir. 2008) (denying motion to interview juror who "expressed concern to the court that the jury did not deliberate objectively and with adequate consideration"); *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (affirming denial of defendants' requests to interview jurors because defendants "failed to proffer any evidence that the jurors engaged in misconduct or . . . were

improperly exposed to outside influences"); *United States v. Hayes*, No. 2:06-cr-00010, 2007

WL 527660, at *2 (W.D. Va. Feb. 15, 2007).[1]

That required showing is conspicuously absent here.  Plaintiff's counsel has not shown,

let alone alleged, that any improper outside influence affected the jury.

### B.    Prohibiting post-trial contact with jurors serves the purpose of Federal Rule of Evidence 606(b) by precluding jurors from impeaching their verdict.

Rules like Local Civil Rule 47(C) work in tandem with Federal Rule of Evidence 606(b),

which prohibits jurors from testifying about their deliberations:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

---

[1] Courts outside the Fourth Circuit require similar showings.  *See, e.g.*, *Haeberle*, 739 F.2d at 1021 ("We have . . . uniformly refused to upset the denial of leave to interview jurors for the purpose of obtaining evidence of improprieties in the deliberations unless specific evidence of misconduct was shown by testimony or affidavit."); *Team Contractors, LLC v. Waypoint NOLA, LLC*, No. CV 16-1131, 2019 WL 2210747, at *2 (E.D. La. May 22, 2019) (denying motion where "there is no evidence of misconduct or impropriety with the jury deliberations"); *Farr v. Midwest Woodworking, Inc.*, No. 99-2526-JAR, 2002 WL 31466746, at *1 (D. Kan. Oct. 30, 2002) (noting the absence of "sufficient reasons for any communication with jurors.  Counsel neither asserts, nor is there any indication, that the jurors were exposed to extraneous prejudicial information or improper outside influence during their jury deliberations."); *CPR Assocs., Inc. v. Se. Pa. Chapter of Am. Heart Ass'n*, No. CIV.A. 90-3758, 1990 WL 210609, at *1-2 (E.D. Pa. Dec. 18, 1990) (denying motion to contact jurors where plaintiffs failed to "submit[ ] specific evidence, through testimony or affidavit, of any impropriety in the deliberations or of any type of irregularity in the jury process itself"); *Allen v. United States*, No. 4:07CV00027 ERW, 2008 WL 80061, at *1 (E.D. Mo. Jan. 4, 2008) ("For the Court to authorize such a post-verdict inquiry, . . . Petitioner must make a preliminary showing that either (1) 'extraneous prejudicial information was improperly brought to the jury's attention' or (2) that an 'outside influence was improperly brought to bear upon any juror.'  Federal Rule of Evidence 606(b).").

Fed. R. Evid. 606(b)(1).[2]  Because both rules serve the same purpose,[3] courts frequently cite

Rule 606(b) in weighing jury-contact motions.  *See, e.g.*, *Gravely*, 840 F.2d at 1159 (noting that

Rule 606(b) "reflects that policy" of disfavoring post-trial contact with jurors); *United States v.*

*Patel*, No. CRIM.A 06-60006, 2009 WL 1579526, at *19 (W.D. La. June 3, 2009) ("Based on

the clear wording and public policy giving rise to Rule 606, it is unclear for what purpose

defendant seeks to conduct these interviews other than to engage in the proverbial 'fishing

expedition.'"), *aff'd*, 485 F. App'x 702 (5th Cir. 2012).

Courts have therefore relied on Rule 606(b) in denying requests to interview jurors based

on public reports that jurors have come to regret their decision.  For instance, in *United States v.*

*Barber*, a pre-*Gravely* decision, the Fourth Circuit considered a request by a defendant to

interview two jurors who indicated that they were "gravely disturbed by the verdict they had

participated in reaching."  668 F.2d 778, 786 (4th Cir. 1982).  One juror stated he "did not think

Barber 'should have been called guilty,'" and another "told a newspaper reporter that she had

been threatened by the foreman of the jury."  *Id.*  The court refused to allow defense counsel to

interview the jurors, noting the bad precedent it would set:

> [I]f we allow such attacks by individual members on the composite
> verdict of all twelve we can expect an unsettling of the system out

---

[2] *But see id.* 606(b)(2) (providing that a juror may testify about whether "(A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form"); *United States v. Vassar*, 346 F. App'x 17, 22-23 (6th Cir. 2009) (noting that "Rule 606(b) permits a juror to testify about prejudicial information or outside influence 'improperly brought to the jury's attention,'" and denying motion where movant "made no such showing").

[3] *See, e.g.*, *Haley v. Kundu*, No. 1:11-CV-265, 2013 WL 4039797, at *12 (E.D. Tenn. Aug. 7, 2013) (noting that the "underlying policy behind [local rule prohibiting juror contact] is akin to that of Federal Rule of Evidence 606(b)"); *Farr v. Midwest Woodworking, Inc.*, No. 99-2526-JAR, 2002 WL 31466746, at *1 (D. Kan. Oct. 30, 2002) (referring to "the policy considerations that underlie our local rule and Fed. R. Evid. 606(b)").

> of all proportion to any expectable improvement in the
> administration of justice.  The opportunities for other abuses which
> would greatly exceed the possibly unfortunate consequences of not
> pursuing belated, post-verdict claims of intimidation by fellow
> jurors are obvious.  In short, . . . the cure proposed is manifestly
> worse than the hypothetical, but unproven, disease.

*Id.* at 786-87.  *See also United States v. Smith*, No. 7:05-cr-00028, 2007 WL 1189642, at *5

(W.D. Va. Apr. 20, 2007) (refusing to permit defendant to contact a juror who said after trial that

other jurors would not listen to her concerns, noting that *Barber* refused such permission on

"more extreme facts"), *aff'd*, 317 F. App'x 323 (4th Cir. 2008).

In short, Rule 606 teaches that Plaintiff's interview request should be denied to protect

the verdict from efforts to impeach it through post-trial statements of alleged juror confusion or

juror regret.

### C.     Numerous policy reasons militate against juror contact.

Courts have long recognized the harms that could flow from granting post-verdict

requests to interview jurors.  Over a century ago, the Supreme Court identified several of them:

> [L]et it once be established that verdicts solemnly made and
> publicly returned into court can be attacked and set aside on the
> testimony of those who took part in their publication and all
> verdicts could be, and many would be, followed by an inquiry in
> the hope of discovering something which might invalidate the
> finding.  Jurors would be harassed and beset by the defeated party
> in an effort to secure from them evidence of facts which might
> establish misconduct sufficient to set aside a verdict.  If evidence
> thus secured could be thus used, the result would be to make what
> was intended to be a private deliberation, the constant subject of
> public investigation; to the destruction of all frankness and
> freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-68 (1915).  Courts since then have underscored and

identified other negative consequences of permitting post-verdict contact with jurors.  Denying

interview requests:

- preserves the "inviolability of the jury room from outside influence of any sort, actual or potential," *Rakes v. United States*, 169 F.2d 739, 745 (4th Cir. 1948);

- "reduce[s] the 'chances and temptations' for tampering with the jury," *Haeberle*, 739 F.2d at 1021;

- "increase[s] the certainty of civil trials," *id.*;

- "spare[s] the district courts time-consuming and futile proceedings," *id.*;

- avoids "diminished confidence in jury verdicts," *United States v. McDougal*, 47 F. Supp. 2d 1103, 1104 (E.D. Ark. 1999); and

- discourages "unbalanced trial results depending unduly on the relative resources of the party," *id.*

Yet another salutary benefit of the no-contact presumption is that it provides "'jurors some protection when they return to their daily affairs.'" *United States v. Birchette*, 908 F.3d 50, 58 (4th Cir. 2018) (quoting *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017)).  When followed, those rules prevent "vexatious, oppressive, and potentially intimidating" harassment of jurors.  *Sixberry v. Buster*, 88 F.R.D. 561, 562 (E.D. Pa. 1980).[4]

## II.     Courts consistently reject Plaintiff's proffered reasons for contacting jurors.

Notwithstanding the default rule prohibiting post-trial juror interviews, counsel identifies two reasons why contact with jurors should be permitted here: to enhance counsel's understanding of Title IX law and to explore the jury's purported misunderstanding of the

---

[4] Notably, while a juror's initiation of contact with counsel may reduce the likelihood of juror harassment, it would not eliminate the other pitfalls of allowing post-verdict communication with jurors.  *See Team Contractors, LLC*, 2019 WL 2210747, at *2 (rejecting the argument that "because the juror affirmatively contacted Waypoint's counsel, none of the policy justifications for the prohibitions on contacting jurors applies").

Court's instruction on "actual knowledge."[5]  As ample case law demonstrates, neither reason overcomes the strong presumption against juror contact.

### A.   Furthering counsel's education is not a valid reason.

The more benign of counsel's reasons for requesting contact with jurors is to "aid the parties in understanding a legal issue of significant importance to Title IX and students' civil rights, including Doe's . . . .  For Plaintiff's counsel, learning more about the jury's deliberations on this question [of 'actual knowledge'] will aid counsel's ability in further understanding a legal question of great importance in this case and others."  Dkt. No. 329 at 2.

But courts have consistently rejected attempts to permit juror contact for the purpose of furthering counsel's education.  The leading case is *Haeberle v. Texas International Airlines*, where an attorney requested to interview jurors, seeking "some lesson" about the basis for their verdict.  739 F.2d at 1020.  According to the attorney's motion,

> "It was obvious that the jury's verdict was so contrary to plaintiffs [sic] and defendant's expectations as to the result, that some lesson for both counsel and plaintiffs could be learned from such an inquiry . . . . [Without] an opportunity to chat with jurors who were agreeable to do so, . . . Plaintiffs and their counsel [would be] left with no more than idle speculation as to the basis on which the result was reached."

*Id.* (quoting motion).  Despite that the motion was *unopposed*, and the juror "interviews were *not* sought to impeach the verdict," *id.* at 1020 (emphasis added), the district court denied the motion.  The Fifth Circuit affirmed.  It found that attorneys had only "limited" interests where they "sought information to satisfy their own curiosity and to improve their techniques of advocacy."  *Id.* at 1022.  Such "interests are not merely balanced but plainly outweighed by the

---

[5] Counsel's motion indicates that a juror "contacted" them, but it provides no details (if any were available) about the juror's purpose in contacting them.  Presumably, he did not do so in order to enhance counsel's education.

jurors' interest in privacy and the public's interest in well-administered justice." *Id.* Thus, at least since *Haeberle*, attorney education has seldom been found a proper basis for contacting jurors.

Courts both inside and outside the Fifth Circuit have regularly followed *Haeberle*'s lead and denied motions for jury contact filed on the basis of attorney education. In *Olsson v. A.O. Smith Harvestore Products, Inc.*, for instance, counsel for the defendant informed the court that—like Plaintiff's counsel here—the lawyer wanted to contact jurors to assist in better representing other clients. 696 F. Supp. 411, 412 (S.D. Ind. 1986) ("The defendant states in its motion that it has similar cases pending, and in light of the award of punitive damages in this case, it needs to know what factors caused the award of such punitive damages."). The court succinctly rejected that ground: "Post verdict communications with jurors solely for the purpose of an attorney's self-education cannot be permitted." *Id.*

Similarly, in *Sixberry v. Buster*, counsel sought to contact jurors "to improve his skills as a trial lawyer by ascertaining from the jurors which facets of the trial influenced their verdict." 88 F.R.D. 561, 561 (E.D. Pa. 1980). Although the court acknowledged attorney education as "a desirable and most laudable endeavor," it did "not feel that granting this motion would further that worthy ambition," so it refused to "go against the strong and well established policy of the Federal courts, as cited above, which frowns on post-trial inquiries to jurors." *Id.* at 562. *See also Benson v. Tyson Foods, Inc.*, 889 F.3d 233, 234-35 (5th Cir. 2018) (affirming denial of "counsel's request to speak to jurors in order to learn the basis of the verdict and improve his trial advocacy"); *Abel v. Ochsner Clinic Found.*, No. CIV.A 06-8517, 2010 WL 1552823, at *1-22 (E.D. La. Apr. 15, 2010) (denying motion where counsel argued that jury contact "will assist it in understanding the public's expectations for healthcare delivery involving patients at risk for

falls"); *Clyma v. Sunoco, Inc.*, No. 03-CV-809-TCK-PJC, 2010 WL 830923, at *3 (N.D. Okla. Mar. 4, 2010) (denying motion of employment lawyers' association to interview lawyers for purpose of attorney education; "the Court is unwilling to invade the individual privacy of the jurors or the general province of the jury in order to further [professional training] programs").

The same is true here.  The Court should reject counsel's request to contact jurors to improve their advocacy in other cases.

**B.      Alleged juror confusion does not warrant juror interrogation.**

Plaintiff's counsel appears to cite another reason for jury contact: the specter of "confusion" and "concern" among jurors regarding the Court's instructions on the "actual knowledge" element of Plaintiff's Title IX claim.  Dkt. 329 at 2 & n.1.  In support, counsel cites a *Washington Post* article that relies on a single juror's account of the jury's deliberations. According to that juror, while the jury was initially split "over whether sexual harassment had occurred or just know it was alleged," additional guidance provided by the Court on Friday morning "convinced them they needed 'direct evidence' school officials knew for a fact that [Doe] was harassed."  Rachel Weiner, *Jury sides with Fairfax schools in case of alleged sexual assault on band trip*, WASH. POST, Aug. 9, 2019, https://tinyurl.com/y6kkoffl.  The article also cited the Court's post-verdict, off-the-record conversation with the jurors: "After rendering the verdict, the jury met briefly with the judge and again asked him about actual knowledge.  The answer they got was broader, [the juror] said, upsetting him and several other jurors."  *Id.*

To begin with, the Court should not credit the information in the article, which is both inadmissible hearsay, *see* Fed. R. Evid. 802, and implausible on its face.  Among other things, the additional guidance provided on Friday morning directly *dispelled* the notion that "actual knowledge" required the jury to conclude that "officials knew for a fact that [Doe] was harassed."  *Id.*  Over Defendant's objection, the Court instructed the jury that "actual knowledge

*of an allegation or allegations*" was sufficient.  Tr. 2188:21-2189:4 (emphasis added).  *See also*

*United States v. Enzinger*, 800 F. Supp. 2d 335, 338 (D. Me. 2011) (finding it "difficult to

comprehend how the juror could have misunderstood the jury instructions" but noting "that is not

grounds for a new trial or for any investigation of the jury deliberations").

But even if that uncorroborated report were accurate, it is inadmissible under Rule

606(b).  As the Advisory Committee made clear when promulgating it, Rule 606(b) precludes

testimony about jurors' consideration of a court's instructions:

> Under the federal decisions the central focus has been upon
> insulation of the manner in which the jury reached its verdict, and
> this protection extends to each of the components of deliberation,
> including arguments, statements, discussions, mental and
> emotional reactions, votes, and any other feature of the process.
> Thus testimony or affidavits of jurors have been held incompetent
> to show . . . *misinterpretations of instructions* . . . .

Fed. R. Evid. 606(b) Advisory Committee's note (emphasis added) (citing *Farmers Coop.*

*Elevator Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir.), *cert. denied*, 389 U.S. 1014 (1967)).  *See*

*also Robles v. Exxon Corp.*, 862 F.2d 1201, 1205 (5th Cir. 1989) (tracing the legislative history

of Rule 606(b) and concluding that it "unmistakably points to the conclusion that Congress made

a conscious decision to disallow juror testimony as to the jurors' mental processes or *fidelity to*

*the court's instructions*" (emphasis added)).

Courts consistently follow that principle in cases where jurors are alleged to have

misunderstood a court's instructions.[6]  And if a court cannot even consider a juror's *sworn*

---

[6] *See, e.g.*, *United States. v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) ("A jury's interpretation and
application of the court's instructions is a part of the deliberative process and was correctly
excluded under Rule 606(b)."), *cert. denied*, 516 U.S. 1180 (1996); *Robles*, 862 F.2d at 1204
("[T]he method by which the court ascertained that the jury had misunderstood its instructions—
receiving testimony from the jurors themselves after they had returned their verdict—is without
question prohibited by the Federal Rules of Evidence."); *United States v. Edelin*, 283 F. Supp. 2d

*testimony* on this topic, neither should it consider a second-hand newspaper account based on a

juror's unsworn allegation. *See United States v. Sampson*, 332 F. Supp. 2d 325, 327 (D. Mass.

2004) (holding, in case where juror's post-verdict statements in the newspaper allegedly

"reveal[ed] a fundamental misunderstanding of the court's instructions," that it was "not

permissible or appropriate for the court to consider [the juror's] reported statements," which "are

the type excluded by" Rule 606(b)).

  Accordingly, courts routinely reject alleged jury "confusion" as a basis for permitting

contact with jurors. For instance, in *United States v. Ailsworth*, the defendant sought to contact

jurors because he "contend[ed] that the numerous questions posited by the jury" during their

deliberations "indicate[d] that they were confused." 948 F. Supp. 1485, 1496 (D. Kan. 1996),

*aff'd*, 138 F.3d 843 (10th Cir. 1998). The court denied the motion, observing that Ailsworth

lacked the "good cause" necessary to justify juror contact. *Id.* at 1497. The court reasoned that

he was impermissibly "seek[ing] to explore the mental processes of the jurors in reaching their

verdict." *Id.* Likewise, in *Shoen v. Shoen*, where the plaintiffs alleged that jurors had been

confused about the verdict forms, the court repeatedly rebuffed requests by the plaintiffs to

contact the jurors. 933 F. Supp. 871, 873 (D. Ariz. 1996) (explaining that "plaintiffs have made

repeated attempts to convince this court to reverse its decision" denying "plaintiffs' request to

contact the jurors"), *aff'd*, 113 F.3d 1242 (9th Cir. 1997). Citing the "public policy against post-

trial communications with jurors," the court reiterated that "alleged confusion about the verdict

forms" was not an "adequate reason . . . to allow the jurors to be contacted." *Id.* at 877. *Cf.*

*United States v. Edwards*, 486 F. Supp. 673, 674 (S.D.N.Y.) (refusing to allow inquiry into post-

---

8, 13 (D.D.C. 2003) (noting that "nobody may inquire into so-called 'inside' influences on the
jury—such as . . . misunderstanding of instructions").

verdict phone calls to defendant and his counsel, purportedly by a juror, indicating that the jury's deliberations violated court's instructions; concluding that the request to examine the caller's allegations "borders on the absurd"), *aff'd*, 631 F.2d 1049 (2d Cir. 1980).

Thus, even assuming that the juror in the *Washington Post* article was confused by the Court's actual-knowledge instructions, it would not warrant letting counsel question jurors about their deliberations.  As the court observed in *Enzinger*, apropos of Plaintiff's extraordinary request here:

> It is not unusual to have second thoughts about [a verdict] and to wish that one had held out for a different outcome.  But to allow those second thoughts to open . . . the jury deliberation process would create pressure on untold numbers of conscientious jurors in untold numbers of cases where friends or neighbors or media later question the verdict.  The precedents wisely prevent this kind of second-guessing.  Even if this juror actually misunderstood the instructions rather than simply ruing his/her earlier vote . . . , that is not grounds for a new trial or for any investigation of the jury deliberations.

800 F. Supp. 2d at 338.

## III.    If the Court departs from precedent and allows juror contact here, it should strictly limit the terms of such contact.

For all the reasons discussed above, the Court should reject Plaintiff's request to let her counsel probe the jurors' mental processes.  But if the Court were to blaze a new trail and allow juror contact here, the Court should impose rigorous "conditions."  L. Civ. R. 47(C).

First, it should limit counsel's ability to use any acquired information for an improper purpose—such as supporting a motion to set aside the jury's verdict.  Those risks are all too real. For instance, in one of the rare cases in which a court *did* allow jury contact, it came to regret its decision.  In *Diettrich v. Northwest Airlines, Inc.*, the Seventh Circuit had to "address a disturbing episode of attorney misconduct that marred the course of the proceedings before the district court"—Northwest had "relied on its lawyers' post-verdict dialogue with the jury . . . to

support its motions for overturning the jury verdict."  168 F.3d 961, 964 (7th Cir. 1999).  The

Seventh Circuit found that conduct "highly improper" and "clearly out of bounds" because it

"inappropriately invited the court to open the black box that is the jury room."  *Id.* (internal

citation and punctuation omitted).  The Court should take steps to eliminate that risk here—such

as by prohibiting contact until after the deadline has passed for a new-trial motion, and by

expressly precluding from use in this case any information discovered through contact with

jurors.  *Cf.* Fed. R. Evid. 606(b).  Given that Plaintiff's professed purpose in seeking juror

contact is to improve counsel's understanding of Title IX law for future cases, these conditions

should be unobjectionable to them.

Second, to protect jurors from unwanted contact, the Court should allow counsel to

communicate only with jurors who reach out to counsel first or who otherwise make clear that

they are willing to discuss the case.  *See, e.g.*, *Cadorna v. City & Cty. of Denver*, No. 04-cv-

01067, 2009 WL 68560, at *4 (D. Colo. Jan. 8, 2009) (providing example of notice to jurors

regarding the voluntary terms of contact).

Third, the opportunity to communicate with jurors should apply equally to counsel for

both Defendant and Plaintiff.  *See id.*  And to ensure equal access, the Court should require that

any in-person or telephone communications with jurors take place with counsel for both parties

present, that counsel copy opposing counsel on any communication sent to a juror, and that any

written communication received from a juror be provided immediately to opposing counsel.

Finally, the Court should establish stiff penalties for non-compliance with any of the

restrictions it imposes.  *Id.* at *3 ("Should the Court be advised by any juror that the Plaintiff's

counsel attempted to initiate or prolong an unwanted communication, or otherwise violated the

terms of this Order, severe sanctions will be imposed.").

Even these conditions would not fully protect jurors from the inherent imposition of speaking with counsel about their deliberations.  The jurors have returned to their daily lives and should not face further imposition.  Moreover, because this case has already been the subject of repeated newspaper stories, permitting such questioning poses a risk that juror's comments will fuel further news stories, exposing them to potential criticism and chilling the willingness of other citizens to serve as future jurors.

The better course is to follow the general rule against allowing such interviews at all.

## CONCLUSION AND
## CONDITIONAL REQUEST FOR A HEARING

Plaintiff's motion should be denied.  Although Plaintiff has waived oral argument on this motion, Dkt. No. 330, the School Board requests oral argument on August 30, 2019, if the Court is considering granting the motion.

August 14, 2019                    Respectfully submitted,

                                   FAIRFAX COUNTY SCHOOL BOARD


                                   By:_____/s/_____
                                   Sona Rewari (VSB No. 47327)
                                   Stuart A. Raphael (VSB No. 30380)
                                   Andrea R. Calem (admitted *pro hac vice*)
                                   HUNTON ANDREWS KURTH LLP
                                   2200 Pennsylvania Avenue, NW
                                   Washington, DC 20037
                                   Telephone: (202) 955-1500
                                   Facsimile: (703) 918-4018
                                   srewari@HuntonAK.com
                                   sraphael@HuntonAK.com
                                   acalem@HuntonAK.com

                                   *Counsel for Defendant Fairfax County School Board*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2019, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

_____/s/_____
Sona Rewari (VSB No. 47327)
