**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:18-cv-614 (LOG/MSN) |
| | ) |
| FAIRFAX COUNTY SCHOOL BOARD, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## PLAINTIFF JANE DOE'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING (1) LIABILITY FOR POST-JUNE 2017 CONDUCT AND (2) PLAINTIFF'S ALLEGED DAMAGES

## <u>TABLE OF CONTENTS</u>

**Page**

RELEVANT BACKGROUND ............................................................................................... 1

    I.    Title IX ................................................................................................................. 1

    II.   Procedural History .............................................................................................. 2

ARGUMENT ....................................................................................................................... 7

    I.    The Fourth Circuit decision precludes the School Board's attempt to cabin
        liability and evidence to the 2016-2017 school year ........................................ 7

        a.   This Court's order at the prior trial did not preclude evidence from
            being offered after Jack Smith graduated in 2017 ................................... 7

        b.   The Fourth Circuit explicitly rejected the reasoning that evidence or
            argument regarding the School Board's liability should be limited to the
            2016-2017 school year .............................................................................. 8

        c.   Pursuant to the mandate rule, the Court must reject the School Board's
            argument that Doe is precluded from presenting evidence or argument
            regarding the School Board's liability after the 2016-2017
            school year ............................................................................................... 10

    II.   Plaintiff may ask the jury to award damages properly pled in her Complaint ............. 12

        a.   Plaintiff may seek damages to remedy the educational opportunities
            and benefits she lost because of the School Board's response to her report
            of sexual assault ....................................................................................... 14

        b.   Plaintiff may seek damages to remedy the medical expenses she incurred
            because of the School Board's response to her report of sexual assault ............... 18

        c.   Plaintiff may seek damages to remedy the earning capacity she lost because
            of the School Board's response to her report of sexual assault ............................. 19

CONCLUSION .................................................................................................................... 21

## RELEVANT BACKGROUND

### I.  Title IX

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Victims of student-on-student sexual harassment may seek damages for Title IX violations from recipients of federal funds, like the School Board. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999). Damages are available if the victim establishes that: (1) she was subjected to sexual harassment that was so severe, pervasive, and objectively offensive that it effectively deprived her of equal access to educational opportunities or benefits provided by the school; (2) the school had actual notice of the alleged sexual harassment; and (3) the school acted with deliberate indifference to the harassment. *Id.* at 633, 650; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021).[1] "Under Title IX, a school acts with deliberate indifference where its 'response to the [alleged] harassment or [the] lack [of any such response] is clearly unreasonable in light of the known circumstances.'" *Fairfax Cty. Sch. Bd.*, 1 F.4th at 271 (quoting *Davis*, 526 U.S. at 648) (brackets in original).

### II.  Procedural History

On May 23, 2018, Doe brought this Title IX action against the School Board, asserting that her school responded to reports of her sexual assault by another student, Jack Smith, with deliberate indifference. ECF No. 1. She pled that Defendant's actions caused her to suffer and continue to "suffer losses of educational opportunities and benefits, along with injuries, damages

---

[1]    Title IX also requires proof that the student was at an educational institution receiving federal funds. *Fairfax*, 1 F.4th at 263. Here that has never been in dispute. ECF Nos. 12, 324-14.

and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care." *Id.* at ¶ 112. During discovery, Plaintiff produced information regarding her out of pocket medical expenses. Three documents reflecting Doe's medical expenses were included on her trial exhibit list, but only one of those documents was entered into evidence during the trial. *See* ECF No. 325-1 at 4 (Proposed Ex. 61-63). At trial, Defendant elicited testimony from Doe's father about how Doe sought care from her primary care physician and a gastroenterologist. Trial Tr. 1231:16-1232:22. Doe's father testified that she had a history of acid reflux, but during Doe's senior year, Doe lost weight and sought medical care. *Id.* Doe's father testified her health deteriorated because of her involvement in band and reached out to the band director to mention it. *Id.*

The jury heard testimony from multiple witnesses about Doe's assertion that the School Board's actions deprived her of educational opportunities and benefits. For example, her grades and attendance declined. Pl Trial Ex. 52-53; Tr. 1765:11-20. Before the assault, when Doe was a sophomore, she received As and a B+ on her final exams, was absent three times, and was never tardy. *Id*. In Doe's junior year, she received a D+, B-, and C on her final exams, taken shortly after the assault, was absent 17 times, and was tardy four times. *Id*. Doe also withdrew from classroom discussions. Trial Tr. 617:15-25; 1755:2-10. To avoid seeing Smith, Doe was forced to "attend" band practice, once her favorite class, from a windowless practice room away from her bandmates. *See, e.g.*, *Id.* at 1614:2- 1615:3; 1753:21-1755:21. The only other "choice" Assistant Principal Jennifer Hogan gave her was to quit band altogether. *Id.* at 1614:14-16. Doe missed the band's end-of-year concert to avoid Smith. *Id.* at 1839:25-1840:2. Doe withdrew from activities in band her senior year, too, testifying that her relationship with the band director only got worse and his treatment of her limited her ability to fully participate in band the way she did before reporting her

sexual assault. Tr. 1473:21-1476:20. Doe abandoned playing in an organized band, and no longer plays the saxophone. Tr. 1482:15-22.

After the close of Plaintiff's case at trial, the School Board sought judgment as a matter of law. *See* ECF No. 305, 306. It did so based on its assertion that Plaintiff's evidence at trial did not establish that (1) the school was deliberately indifferent to Doe's report of sexual assault and (2) Doe lost an educational opportunity or benefit. ECF No. 306 at 15. In the same trial motion, Defendant also moved to cabin its liability to only the 2016-2017 school year, the year Doe reported the assault and Smith's last year at Oakton High School:

> [E]ven if the Court decides to reserve ruling in full on this motion, it should at least rule that no liability may be imposed on the School Board for any conduct by Oakton High School officials after the 2016-2017 school year, which ended in June 2017, when Jack Smith graduated. Plaintiff had no contact with Jack Smith after the March 2017 band trip, and he graduated from Oakton in June 2017. So there is no basis on which a reasonable jury could find that, for the 2017–2018 school year, the School Board's alleged deliberate indifference, "at a minimum, 'cause[d] [Plaintiff] to undergo' harassment or 'make [her] liable or vulnerable' to it." *Davis*, 526 U.S. at 645 (citation omitted).

ECF No. 306 at 19-20. The Court denied Defendant's JMOL motion, allowing the evidence presented to go to the jury, but granted it with respect to liability after the 2016-2017 school year:

> Defendant has moved to limit its liability to only conduct occurring during the 2016-2017 school year. Finding that there is no evidence that any administrator acted with deliberate indifference after Jack Smith graduated, and thus there could be no Title IX violation after that time. Defendant's motion is GRANTED. The evidence that the effects of the conduct occurring in the 2016-2017 school year continued into the 2017-2018 school year is admissible for consideration of damages. For this reason the Court will not give the proposed mitigation of damages jury instruction.

ECF No. 313. The Court entered an order—not a judgment—based on the evidence presented at trial. *Id.*; Tr. 1599:17-1600:7 ("there was enough material facts in dispute that I thought the case should go to trial. And the trial has flushed out those, as well as many other material facts").

At the conclusion of evidence, the Court instructed the jury on awarding damages for "emotional pain, suffering, mental anguish, loss of enjoyment of life, or other nonpecuniary losses." ECF Nos. 325-14 at 20 (Jury Instructions); 326 (Special Interrogatory Verdict Form).

The jury found that Smith had sexually harassed Doe, and that the harassment had been so severe, pervasive, and objectively offensive as to deprive her of educational opportunities. ECF No. 326. The jury also found, however, that the school lacked actual knowledge of the harassment, the subject of jurors' multiple questions during deliberations. *Id.*, ECF Nos. 325-10 to 325-13. Accordingly, the jury entered a verdict for the School Board without reaching the question of whether the school had been deliberately indifferent to Doe's report of sexual harassment such that it could be held liable under Title IX. ECF No. 326.

Doe moved for a new trial, arguing that the jury's verdict on actual knowledge could not stand. ECF Nos. 336-37. The motion did not include argument regarding the Court's jury instructions or rulings on deliberate indifference because the jury never reached those questions. The Court denied the motion. ECF No. 352. Plaintiff appealed to the Fourth Circuit, appealing all judgments, orders, and decisions made within and following trial. ECF No. 367 (appealing, among other items, the judgments entered on the docket, as well as "related Orders and decisions that occurred within the trial").

On June 16, 2021, the Fourth Circuit reversed the judgment and remanded for a new trial because "no evidence in the record supports the jury's conclusion that the School Board lacked actual notice of Smith's alleged sexual harassment of Doe." *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263 (4th Cir. 2021). The Court explained that "when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of

such harassment for Title IX purposes." *Id.* at 265. Under an abuse of discretion standard, the Fourth Circuit concluded that the Board had received numerous reports sufficient to establish knowledge, so much so that the court found "*no evidence* supports the jury's finding that the School Board lacked actual notice of the alleged sexual harassment." *Id.* at 268-270 (emphasis added). Among these were Doe's written statement describing the assault, Doe's statement to an assistant principal "that she did not think the sexual contact with Jack was consensual," Doe's mother's report of "a sexual assault," and reports from other community members, including an email titled "Need to Report Peer Pressure and Sexual Harassment." *Id.* "If these facts do not show that the School Board had actual notice," the Fourth Circuit wrote, "we don't know what would." *Id.* at 270. The one dissenting judge agreed that "whether the school received notice of the incident . . . could hardly have been in dispute." *Id.* at 278 (Niemeyer, J., dissenting).

In its decision, the Fourth Circuit also rejected the Board's proposed alternative grounds for affirmance, finding that a reasonable jury could conclude that the Board acted with deliberate indifference and that Doe was deprived of educational opportunities. *Id.* at 270-72. In doing so, the Court did not limit a plaintiff's ability to prove the "vulnerability" prong of the *Davis* test to only those circumstances where she has exposure to the alleged harasser. It articulated two ways a plaintiff may establish deliberate indifference:

> [A] school may be held liable under Title IX based on a single, pre-notice incident of severe sexual harassment, where the school's deliberate indifference to that incident made the plaintiff more vulnerable to future harassment, or otherwise had "the combined systemic effect of denying [equal] access to a scholastic program or activity." Id. This reading of Title IX is consistent with the plain language of the statute, which reads: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As the Supreme Court noted in *Davis*, "[t]he statute makes clear that, whatever else it prohibits, *students must not be denied access to educational benefits and opportunities on the basis of gender.*" *Davis*, 526 U.S. at 650 (emphasis added).

> Even a single incident of sexual harassment, if sufficiently severe, can inflict serious lasting harms on the victim – physical, psychological, emotional, and social. And where such harms deprive the victim of the ability to fully participate in or to benefit from the educational opportunities provided by their school, and where this deprivation remains unremedied or is compounded as a result of the school's deliberate indifference, the victim surely is "denied access to educational benefits and opportunities on the basis of gender" – which Title IX clearly prohibits. *Id.* In such situations, the school's inadequate response to the alleged sexual harassment leaves the victim more vulnerable to further harassment.

> Thus, we hold that a school may be held liable under Title IX if its response to a single incident of severe sexual harassment, or the lack thereof, was clearly unreasonable and thereby made the plaintiff more vulnerable to future harassment *or further contributed to the deprivation of the plaintiff's access to educational opportunities*. Because we conclude that a reasonable jury could make such a finding in this case, we decline to affirm the district court's judgment based on a lack of deliberate indifference.

*Fairfax Cty. Sch. Bd.*, 1 F.4th at 274-75 (emphasis in original, added to last paragraph). This language, applied in this case, rejects the reasoning behind the district court's prior order temporally limiting liability, an order made based on the evidence presented at trial that Jack Smith graduated and therefore no School Board administrator engaged in actions that could constitute deliberate indifference. ECF No. 313. The Fourth Circuit reversed and remanded for a new trial. The court entered judgment on June 16, 2021, remanding the case to this Court "for further proceedings consistent with the court's decision." ECF No. 372.

The School Board filed a petition for rehearing *en banc* and a motion to stay the mandate, both of which the Fourth Circuit rejected. ECF Nos. 380-81; *Doe v. Fairfax Cty. Sch. Bd.*, 10 F.4th 406 (4th Cir. 2021). The School Board filed a petition for certiorari to the U.S. Supreme Court, which was denied. *See Fairfax Cty. Sch. Bd. v. Doe*, 143 S. Ct. 442 (2022).

On December 6, 2022, the Court held a status conference. ECF No. 408. Among other pre-trial matters, the Court requested briefing on the scope of remand and the law of the case. *Id.*

<u>**ARGUMENT**</u>

**I.     The Fourth Circuit decision precludes the School Board's attempt to cabin liability and evidence to the 2016-2017 school year.**

Defendant first argues that Doe is precluded, based on the mandate rule, from providing evidence or argument that it is liable for conduct after the 2016-2017 school year. *See* ECF No. 411 at 12-13. Its argument misses the mark. Defendant ignores the language of this court's prior order (ECF No. 313) and the clear holding, language, and instruction of the Fourth Circuit's opinion, judgment, and mandate. Where the Fourth Circuit explicitly rejected the justification for the Court's prior JMOL order, and itself relied on testimony regarding Doe's senior year to reverse and remand the judgment, it is the mandate rule that requires denial of Defendant's motion to cabin liability to the 2016-2017 school year.

**a.   This Court's order at the prior trial did not preclude evidence from being offered after Jack Smith graduated in 2017.**

This court never ruled or ordered that Doe was precluded from presenting evidence of "any conduct" after Smith's graduation at the end of the 2016-2017 school year. The Court issued the order in response to Defendant's motion for judgment as a matter of law *after* the presentation of Plaintiff's case in chief. *See* Fed. R. Civ. P. 50(a). The Court issued no order limiting the presentation of evidence regarding her senior year, and as discussed above, both parties solicited testimony and presented documents regarding Doe's senior here at Oakton High School. Indeed, the Court specifically allowed "evidence that the effects of the conduct occurring in the 2016-2017 school year continued into the 2017-2018 school year [be] admissible for consideration of damages." ECF No. 313.

Yet, the School Board attempts to twist this clear language into something else: the School Board apparently seeks to preclude Doe from offering such evidence because it may also show its

liability. This Court should not allow the Board to preclude Doe from presenting evidence of harm after the 2016-2017 school year concluded, even though such evidence may also go to the School Board's liability. Moreover, Defendant's motion sweeps too broadly if its reference to "any conduct" also includes inaction by school personnel, as it contravenes the Fourth Circuit's ruling, as shown next.

### b. The Fourth Circuit explicitly rejected the reasoning that evidence or argument regarding the School Board's liability should be limited to the 2016-2017 school year.

Regardless of the scope of this Court's trial-related order, the Fourth Circuit's decision clearly allows evidence from after the 2016-2017 school year to show the School Board's liability under Title IX. The School Board's motion *in limine* in this regard therefore fails for this independent reason as well.

The Fourth Circuit ruled on the liability issues of deliberate indifference and lost educational opportunities based on the briefing by the parties, including Defendant raising alternative grounds for affirmance. Doe had appealed all judgments, orders, and decisions made within and following trial. ECF No. 367 (appealing, among other items, the judgments entered on the docket, as well as "related Orders and decisions that occurred within the trial"). That included the non-final order regarding the temporal scope of liability, which merged into the final judgment.

The doors to the Title IX liability components of deliberate indifference and lost educational opportunities were opened on appeal, and the Fourth Circuit ruled on those issues, finding a reasonable jury could conclude in Doe's favor based on the evidence introduced at the first trial, including evidence from her senior year. The Fourth Circuit explicitly rejected the School Board's reasoning for seeking to cabin liability to the 2016-2017 school year and this Court's order limiting liability to that time frame.

Critically, the Fourth Circuit found that "where [harms from sexual harassment] deprive the victim of the ability to fully participate in or to benefit from the educational opportunities provided by their school, and *where this deprivation remains unremedied or is compounded as a result of the school's deliberate indifference*, the victim surely is 'denied access to educational benefits and opportunities on the basis of gender' — which Title IX prohibits." *Fairfax Cty. Sch. Bd.*, 1 F.4th at 274-75. The Fourth Circuit firmly and clearly held that a "school may be liable under Title IX if its response, *or the lack thereof*, to [a single incident of sexual harassment] was clearly unreasonable and *thereby made the plaintiff more vulnerable to further harassment or further contributed to the deprivation of the plaintiff's access to educational opportunities*." *Id.* (emphasis added) (cleaned up).

Indeed, the Fourth Circuit relied on evidence from Doe's senior year, after Smith graduated, in concluding that a reasonable jury could find that Doe lost educational opportunities, an element of proving liability under Title IX. Noting the record "includes significant evidence" for a jury to find that Doe was deprived of equal access to educational opportunities or benefits, the Fourth Circuit, in part, referenced that "Doe testified that while band had long been an important part of her life, she found it difficult to enjoy and fully participate in band activities after the alleged assault — *even during her senior year*." *Id.* at 276-77 (emphasis added).

The Fourth Circuit thus held that action *or inaction* can constitute evidence from which Doe could prove deliberate indifference or educational deprivation, thereby abrogating the Court's order on Defendant's motion for judgment as a matter of law, which focused solely on the actions of school officials and was filed by Defendant on the grounds that Smith graduated. Additionally, the Fourth Circuit made clear that evidence from Doe's senior year is relevant to elements of Title IX liability by direct citation to those facts.

9

Under the mandate rule, this court is required to give those definitive and settled rulings effect in the new trial. The School Board's motion *in limine* on these issues must be denied.

### c. Pursuant to the mandate rule, the Court must reject the School Board's argument that Doe is precluded from presenting evidence or argument regarding the School Board's liability after the 2016-2017 school year.

In its opinion, the Fourth Circuit reversed this Court's judgment and remanded the case for "for further proceedings consistent with the court's decision." ECF No. 372; *Fairfax Cty. Sch. Bd.*, 1 F.4th at 277. The mandate issued September 30, 2021. ECF No. 381.

The law of the case doctrine (of which the mandate rule is a subsidiary part, *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)) recognizes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).[2]

The mandate rule "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest," *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007), and "forecloses relitigation of issues *expressly or impliedly decided* by the appellate court." *United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993) (emphasis added). A district court "may act on matters left open by the mandate, by considering both the mandate's letter and spirit." *Harris v. Norfolk S. Ry.*, No. 2:11-cv-00497, 2015 U.S. Dist. LEXIS 71639, at *2-3 (S.D. W. Va. June 3, 2015) (citing *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) and *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 2001)). Neither the law of the case

---

[2] Under the law of the case doctrine, once the "decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)).

doctrine nor the mandate rule constrains a court's review when a different record is presented at a new stage of the case in conformance with the mandate. *See, e.g.*, *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).

By ignoring the above critical language in the Fourth Circuit's opinion, the School Board in effect attempts to circumvent the mandate rule and turns it on its head. Defendant does not offer a single case to support the proposition that the court is now mandated to maintain its previous ruling on Defendant's JMOL motion made during the previous trial and based on the evidence presented at that trial, particularly when that ruling conflicts with the Fourth Circuit's opinion. ECF No. 411 at 12-13.[3] Defendant's cited cases are inapplicable to the facts and circumstances of this case.

Even if for some reason the Court's order on Defendant's motion for judgment as a matter of law was a rule of law in this case, the Fourth Circuit's decision explicitly rejected the reasoning on which defendant sought JMOL and on which this court granted it. Thus, under the general mandate issued by the Fourth Circuit, the explicit and implicit holdings and reasoning in its opinion, and the letter and spirit of the mandate, this Court can and should revisit its prior order regarding the temporal scope of liability and vacate that order.

---

[3]     *See, e.g.*, *Edd Potter Coal Co., Inc. v. Dir. of Office of Workers' Comp. Programs*, 39 F.4th 202, 210 (4th Cir. 2022) (affirming decision of ALJ based on failure to raise a specific legal challenge during prior administrative proceedings, when the scope of first remand was only to decide the extent of employee's injuries, not new stages of liability); *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (reversing district court where appellate court originally remanded only for consideration of reasonable attorneys' fees for those issues appealed, but on remand district court awarded fees for a motion that was not subject of the appeal or remand); *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (finding party waived new arguments or legal theories where not raised in any proceedings, appellate or trial, until the case was remanded following an initial appeal).

As shown above, the Fourth Circuit's ruling does not limit liability to only those circumstances where a plaintiff can establish further harassment or a vulnerability to further harassment. It allows for a plaintiff like Doe to present evidence at trial that she continued to experience an educational deprivation for purposes of both liability and damages. For Doe, that included during her senior year (the 2017-2018 school year). While defendant is able to seek JMOL after the completion of Plaintiff's case-in-chief on re-trial, the Court's prior JMOL ruling that cabined liability to the 2016-2017 school year, requested by defendant on the premise that Smith graduated and therefore Plaintiff could not have been vulnerable to further harassment, cannot stand. The Fourth Circuit has ruled otherwise.

Based on the mandate rule, the School Board's argument must be rejected.

## II.    Plaintiff may ask the jury to award damages properly pled in her Complaint.

Defendant moves *in limine* to preclude Plaintiff from presenting any evidence of damages, including damages for emotional distress, lost earning capacity, medical expenses, and lost educational opportunities.[4] ECF No. 411 at 13-22. As Plaintiff stated during the Court's status conference and in her status report, she will not ask the jury to award emotional distress damages. Still, Defendant improperly asks the Court to "preclude Plaintiff from presenting evidence or testimony related to damages for emotional distress." *Id.* at 17. The Court should decline Defendant's invitation to issue what would amount to an advisory opinion where, as here, Plaintiff has informed Defendant and this Court (before the filing of the instant motion) that she will not

---

[4]      At no time prior to this motion did Defendant assert an objection to any of the damages pled in Plaintiff's complaint on the basis that they are not available under Title IX. *See* ECF No. 14 at 6, 9 (moving to dismiss Plaintiff's request for declaratory relief, in part, on the basis that it was "fully duplicative of the same issues to be resolved and litigated in her claim for compensatory damages"); ECF No. 25, Def. Ans. Compl. Defendant has not shown how it did not waive this argument. Nor can Defendant put forth evidence in a reply brief to try to meet its burden. *See* FRCP 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

seek damages for emotional distress in her second trial. Defendant's motion in this regard, *id.* at 13-17, is moot.

Then, the School Board attempts to shoehorn all other categories of damages into a Supreme Court decision limited to just one. In 2022, the U.S. Supreme Court issued an opinion in *Cummings v. Premier Rehab Keller*, a case involving two Spending Clause statutes, Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). There, the Supreme Court ruled that emotional distress damages "are not recoverable under the Spending Clause antidiscrimination statutes" that it "consider[ed]" in the case because the statutes are analogous to contracts – specifically between the federal government and funding recipients – and such damages are not traditionally available in suits for breach of contract. *Id. Cummings* was not a Title IX case, and it did not address a Title IX plaintiff's ability to recover damages for losses outside of emotional distress. Nothing in the *Cummings* opinion prohibits a Plaintiff in a Title IX case from seeking damages for lost educational opportunities, medical expenses, and lost earning capacity; these were types of damages not at issue in the *Cummings* case. Contract law allows such remedies, and the Supreme Court's decision in *Cummings* did not close the door on a Title IX plaintiff's ability to remedy the harm caused by a school's discrimination when it responds with deliberate indifference to known sexual harassment.

The United States agrees. Last month, the U.S. Department of Justice filed an amicus brief in support of a plaintiff's Title IX case, taking the position that these damages are available to Title IX plaintiffs:

> Many of the injuries for which S.C. seeks to recover and for which the district court awarded damages were not at issue in *Cummings* and thus still are likely recoverable. This includes compensation for lost educational benefits as a result of school officials' deliberate indifference and reimbursement of medical expenses.

> Depending on the resolution of S.C.'s other deliberate-indifference claims, it also
> could include compensation for pain and suffering that S.C. experienced as a result
> of any physical (as opposed to emotional) injuries.

Brief for the United States as Amicus Curiae Supporting Plaintiff-Appellee/Cross-Appellant, *S.C.*

*v. Metropolitan Government of Nashville and Davidson County*, Nos. 22-5104, 22-5125 (6th Cir.

Dec. 12, 2022), ECF No. 36, https://www.justice.gov/crt/case-document/file/1559566/download.

Each category of damages is addressed in turn below.

### a. Plaintiff may seek damages to remedy the educational opportunities and benefits she lost because of the School Board's response to her report of sexual assault.

Defendant moves to preclude Plaintiff from seeking damages for "lost educational

opportunities" absent proof of monetary loss. ECF No. 411 at 20-23. This ignores the plain text of

the statute, contract law, and the instructive decisions of other courts post-*Cummings*. Here, a jury

once found that Smith's sexual harassment of Doe was so severe, pervasive, and objectively

offensive that it deprived Doe of educational opportunities. It could do so again and determine

damages with instruction.[5]

The premise of the Supreme Court's decision in *Cummings* is that a party should have

"clear notice" of the potential for being held liable for an alleged harm when pursuing certain

claims. *Cummings*, 142 S. Ct. at 1576; *see also Doe v. City of Pawtucket*, No. 17-365-JJM-LDA,

2022 U.S. Dist. LEXIS 179574, at *12 (D.R.I. Sep. 29, 2022) (noting the Court "wrestled with the

disagreement over the availability of emotional distress damages, but concluded that the lack of

consensus meant that such a remedy was not generally available"). The Court's analysis centered

---

[5] The School Board did not ask the Fourth Circuit to review the jury's findings that Smith
had sexually harassed Doe, or that the harassment had been so severe, pervasive, and objectively
offensive that it deprived Doe of educational opportunities. *See* ECF No. 336 (verdict); App. Ct.
Doc. 27 (March 9, 2021) at 52-57 (Board's brief on appeal).

on the fact that the statutes at issue in the case were passed pursuant to Congress's Spending Clause powers and that "the 'legitimacy of Congress' power' to enact Spending Clause legislation rests . . . on 'whether the recipient [of federal funds] voluntarily and knowingly accepts the terms of that contract.'" *Id.* at 1570 (cleaned up) (quoting *Barnes v. Gorman*, 536 U.S. 181, 186 (2002)).

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There is no dispute that a Title IX plaintiff's claim can (and must) include an assertion that sexual harassment deprived her of equal access to the educational opportunities or benefits provided by a school. *Davis*, 526 U.S. at 650 ("The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender."). No defendant can claim it did not have notice of being responsible for such loss when it is in the plain text of the statute. Here, Defendant concedes educational loss is "an essential element of every Title IX claim." ECF No. 411 at 20.

That aside, contract law allows for damages based on lost opportunities, and at least two courts have allowed a plaintiff to seek damages under Spending Clause statutes for lost opportunities since the *Cummings* decision. *See Montgomery v. District of Columbia*, Civil Action No. 18-1928 (JDB), 2022 U.S. Dist. LEXIS 92281, at *72 (D.D.C. May 23, 2022); *Chaitram v. Penn Med.-Princeton Med. Ctr.*, Civil Action No. 21-17583 (MAS) (TJB), 2022 U.S. Dist. LEXIS 203676, at *5 (D.N.J. Nov. 8, 2022). In *Montgomery*, the plaintiff alleged the government failed to offer him an accommodation while he was in police custody in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act"). *See Montgomery*, 2022 U.S. Dist. LEXIS 92281 at *25. The court reasoned that "while [the plaintiff] cannot recover either

15

emotional distress or reputation damages in light of *Cummings*, he may be able to recover some small amount of damages to compensate him for the opportunity he lost when he was denied the ability to meaningfully access and participate in his interrogations" while in police custody. *Id.* at *75. The court relied on contract law's "expectation-interest" theory of damages—the plaintiff was a third-party beneficiary to the District of Columbia's contract with the federal government in which the District agreed not to discriminate against people with disabilities. The plaintiff asserted the District failed to uphold its promise of anti-discrimination, which resulted in him losing out on an opportunity to full participate in his interrogation with police at the same level as non-disabled people. *Id.* at *75-77. For that reason, the court found, damages to remedy the lost opportunity is "entirely appropriate in a traditional contract case." *Id.* (citing Restatement (Second) of Contracts § 347 cmt. A (Am. L. Inst. 1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.")).

The court in *Chaitram* reached a similar conclusion in a disability discrimination case where the plaintiff asserted a hospital failed to provide reasonable accommodations when she sought medical treatment in violation of the ADA, Rehab Act, and Affordable Care Act. *Chaitram*, 2022 U.S. Dist. LEXIS 134592, at *2 (D.N.J. July 28, 2022). There, the hospital moved to dismiss plaintiff's claims for lack of available damages. The court denied the motion, finding the plaintiff had "an expectation interest in the ability to fully participate in her own medical care through effective communication," which she alleged was denied to her. *Chaitram*, Civil Action No. 21-17583 (MAS) (TJB), 2022 U.S. Dist. LEXIS 203676, at *6.

Defendant's assertion that Doe's lost educational opportunities are only cognizable with proof of a monetary amount is unsupported by and inconsistent with case law. Although monetary losses in contract cases must be established with reasonable certainty, "this requirement does not mean, however, that the injured party is barred from recovery unless he establishes the total amount of losses." Restatement (Second) of Contracts § 352 cmt. A. Defendant does not cite (and Plaintiff has not found) a single case that finds these damages are only cognizable when asserted with a specified monetary amount. To the contrary, the court in *Montgomery* explicitly stated that it "will not usurp the role of the jury and attempt to quantify such damages in the summary judgement setting." *Montgomery*, Civil Action No. 18-1928 (JDB), 2022 U.S. Dist. LEXIS 92281, at *77, n.39. Another court, post-*Cummings*, instructed the jury on how to assess and determine such damages and also left deciding the monetary amount to the jury.[6] *See* Final Jury Instructions, *Nancy Roe v. Purdue University*, No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022), ECF No. 140, Instruction 24 (issuing instruction to jury to compensate for any injury "sustained as a direct result of being denied equal access to educational opportunities by Defendant Purdue University's handling of her complaint of assault," as well as economic loss, with limiting instruction regarding "emotional harm"). It is for the jury to award damages after hearing the evidence presented at trial.

---

[6]     Damages under constitutional claims are instructive here, where juries may award damages for the lost right—the opportunity to vote, for example—without actual monetary loss. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 311 n.14 (1986) (discussing damages in voting rights case where "damages are presumed from the wrongful deprivation of it *without evidence of actual loss of money, property, or any other valuable thing*) (internal citation omitted, emphasis added); *Nixon v. Herndon*, 273 U.S. 536 (1927) (allowing damages for lost opportunity to vote); *Piver v. Pender Cty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987) (holding an "injury to a protected first amendment interest can itself constitute compensable injury *wholly apart from any emotional distress*, humiliation and personal indignity, emotional pain, embarrassment, fear, anxiety and anguish suffered by plaintiffs") (emphasis added, cleaned up)). *See also Memphis Cmty. Sch. Dist.*, 477 U.S. at 314-15 (Marshall, J. concurrence) (highlighting importance of damages for lost opportunities).

### b. Plaintiff may seek damages to remedy the medical expenses she incurred because of the School Board's response to her report of sexual assault.

Defendant moves *in limine* to preclude a jury from reimbursing medical expenses she incurred as a result of the School Board's deliberate indifference in response to her report of sexual assault. Medical expenses, when a breach of contract causes an injury, are compensable.

"[M]any sources to which the Supreme Court referred in *Cummings* also noted the availability of damages for physical injury in breach of contract actions." *Pawtucket*, 2022 U.S. Dist. LEXIS 179574 at *11. For instance, one source quoted multiple times by the Court observes that, "[a]nother common exception to the general prohibition on noneconomic damages is when a breach of contract results in physical injury or extreme hardship.") *Id.* (quoting David A. Hoffman & Alexander S. Radus, *Instructing Juries on Noneconomic Contract Damages*, 81 Fordham L. Rev. 1221, 1229-30 (2012)). Here, Plaintiff produced evidence in discovery of medical expenses associated with care from Doe's primary care physician, from whom she sought treatment for stomach issues she alleges were caused by the School Board's actions and inactions, and her counselor, where she received a diagnosis of Adjustment Disorder with Anxiety. If she prevails, Doe is entitled to seek damages for her out of pocket expenses related to her medical treatment, as recovery distinct from emotional distress itself.

Defendant's reliance on *Pawtucket* is misplaced. *See* ECF No. 411 at 20; *Pawtucket* 2022 U.S. Dist. LEXIS 179574. There, the plaintiff sought damages for emotional distress, "pain and suffering," and medical expenses as three distinct categories of damages (among other damages). *Id.* at *10. The court in *Pawtucket* found that *Cummings* precludes a Title IX plaintiff from seeking emotional distress damages but allowed the plaintiff to seek damages for medical expenses, some of which stemmed from physical injuries. *Id.* at *10-11. The court disallowed "pain and suffering,"

18

as it found the plaintiff in that case was not able to articulate how it was distinct from the claim of emotional distress or medical expenses. Medical expenses, however, were allowed. *Id*.[7]

Such instructions in Title IX cases are not unprecedented. For example, in *Theno*, the court instructed the jury on awarding for "pain, suffering, or mental anguish," and separately instructed on awarding for "medical care and treatment caused by the school's deliberate indifference." Jury Instructions, *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 394 F. Supp. 2d 1299 (D. Kan. 2005) (No. 04-2195-JWL), ECF No. 144, Instruction 18 (trial testimony indicating plaintiff suffered physical side effects as a result of the harassment). Any concern about a jury awarding damages for emotional distress instead of an injury or medical expense can be appropriately managed with a limiting instruction, if determined necessary during the course of the trial. *See* Final Jury Instructions, *Purdue University*, No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022), ECF No. 140, Instruction 24.

> **c. Plaintiff may seek damages to remedy the earning capacity she lost because of the School Board's response to her report of sexual assault.**

Defendant moves *in limine* to preclude Plaintiff from recovering for any lost earning capacity, relying exclusively on caselaw involving plaintiff claims for damages predicated on alleged reputational harm. *See* ECF No. 411 at 18-19. Defendant's motion is unavailing because Plaintiff does not seek damages for lost earning capacity on the basis that the School Board's discrimination hurt her reputation. On that basis alone, the motion should be denied. Rather, Plaintiff may elect to seek damages for lost earning capacity because the School Board caused her

---

[7]     In allowing medical expenses, the court cited plaintiff's complaint, which simply stated she "has needed medical care and attention." Third Amended Complaint, *Doe v. City of Pawtucket*, No. 1:17-cv-365-JJM-LDA (D.R.I. July 18, 2018), ECF No. 57 at 21-22 ¶ 77.

an injury that consequently limited her earning capacity. This harm, not related to a reputational injury, is recoverable under contract law.

Defendant cites to Williston on Contracts to suggest lost earning capacity is not recoverable in any circumstance, but the portion of the text immediately preceding Defendant's citation states otherwise. ECF No. 411 at 18. The full text of the passage in the treatise offers examples of how lost earning capacity, a consequential damage in contract law, may be recoverable:

> [A] *wrongfully discharged professional employee may recover consequential damages for the loss of "identifiable professional opportunities," provided that the ordinary requirements for the recovery of consequential damages, such as foreseeability and causation, are met, and provided further that the employee alleges and proves with specificity that the defendant's breach actually adversely influenced or affected future job opportunities.* However, generalized evidence that the employer's breach might make the plaintiff's job search more difficult, or even expert testimony that the employee could, in the abstract, face enhanced difficulty in obtaining future employment following the defendant' breach, is not sufficient, since such proof amounts essentially to an assertion that the defendant's breach harmed the plaintiff's reputation, and the courts are in agreement that consequential damages for harm to reputation are not recoverable, because they are altogether nonquantifiable and speculative.

24 Williston on Contracts § 66.4 (4th ed. 2022) (emphasis added to portion omitted from Defendant's brief). *See also Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000) ("no court – anywhere – has held that a plaintiff cannot recover consequential damages if he has alleged and proved that breach of an employment contract resulted in the loss of future 'identifiable professional opportunities'") (quoting *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 894 (1st Cir. 1988)). Therefore, a remedy for lost earning capacity is available in Title IX cases.[8]

---

[8]      The first trial in this case was in August 2019, while Doe was still in college. Many of the facts upon which Plaintiff may establish a claim for a lost earning capacity did not yet exist at that time. In short, trying to prove such a claim was not ripe. As mentioned at the Status Conference, Plaintiff is assessing whether to present, and the full extent of the evidence she may present at trial regarding, any lost earning capacity. ECF No. 406.

One court, in a case cited by Defendant, has reached the same conclusion post-*Cummings*. There, the court granted the defendant's motion for partial summary judgment on the plaintiff's request for "emotional distress damages and reputational harm damages." *Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 U.S. Dist. LEXIS 219806, *13 (D. Ariz. Dec. 6, 2022). That decision, however, does not address or disturb the court's prior decision only a month earlier where it allowed an expert witness to present testimony on the plaintiff's alleged lost earning capacity caused by the school's discrimination, not based on an alleged reputational harm. *See Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 U.S. Dist. LEXIS 209690, at *59 (D. Ariz. Nov. 18, 2022) (denying *Daubert* motion for expert who offered testimony regarding lost earning capacity after school's Title IX proceeding). This is consistent with what courts have allowed in Title IX cases prior to the *Cummings* decision. *See, e.g., Rullo v. Univ. of Pittsburgh*, No. 17-1380, 2021 U.S. Dist. LEXIS 29882, at *6-8 (W.D. Pa. Feb. 18, 2021) (allowing evidence relevant to claim of lost future earnings because of school's discrimination and retaliation). Damages for lost earning capacity are allowed.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully submits the Court should deny Defendant's Motion *in Limine* to Preclude Evidence and Argument Regarding (1) Liability for Post-June 2017 Conduct and (2) Plaintiff's Alleged Damages.

Date: January 9, 2023

Respectfully submitted,

ATES LAW FIRM, P.C.

*/s/ John R. Ates*
John R. Ates (VSB #71697)
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
703-647-7501 (tel)
703-229-6430 (fax)
j.ates@ateslaw.com

CORREIA & PUTH, PLLC

Linda M. Correia (admitted *pro hac vice*)
Lauren A. Khouri (admitted *pro hac vice*)
1400 16th Street NW, Suite 450
Washington, D.C. 20036
(202) 602-6500 (tel)
(202) 602-6501 (fax)
lcorreia@correiaputh.com
lkhouri@correiaputh.com

PUBLIC JUSTICE, P.C.

Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Z. Brodsky (admitted *pro hac vice*)
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600 (tel)
(202) 232-7203 (fax)
akimmel@publicjustice.net
abrodsky@publicjustice.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I filed the foregoing using the CM/ECF system, which will send electronic notice of this filing to all Defendant's counsel of record.

*/s/ John R. Ates*
John R. Ates (VSB #71697)